For the reasons hereinbefore stated, the judgment of the United States Customs Court should be *affirmed.*

UNITED STATES *v.* WESTCO LIQUOR PRODUCTS Co. (No. 4644)[1]

[1] C. A. D. 446.

United States Court of Customs and Patent Appeals, February 6, 1951

*David N. Edelstein,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

*Lawrence, Tuttle & Harper* (*Walter I. Carpeneti* and *George R. Tuttle* of counsel) for appellee.

[Oral argument December 6, 1950, by Mr. Donohue and Mr. Tuttle]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal by the United States from the judgment of the United States Customs Court, Third Division, rendered pursuant to its decision, C. D. 1219 (Vol. 85, No. 12, Weekly Treasury Decisions), sustaining Protest 132187–K/75344 filed by appellee against the

assessment of internal revenue tax at the rate of $2.00 per gallon on certain still wine pursuant to section 1650 of the Internal Revenue Code.

It is claimed in the protest, as amended, that the wine should have been assessed (under section 1650, *supra*) at the rate of 60 cents per gallon (as containing over 14% and not over 21% alcohol).

On January 6, 1944, appellee imported a shipment of sherry wine from Spain. It was entered for warehousing at the port of San Francisco. The shipment contained several butts of sherry wine. Butts numbered 2, 3, and 4 are the only ones here involved.

On June 7, 1944, the collector liquidated the entry and assessed the appropriate amount of duty under the Tariff Act. That assessment of duty is not here involved. He also assessed internal revenue tax at the rate of 60 cents per gallon.

Butt numbered 4 was withdrawn from warehouse on January 22, 1945; butt numbered 2 was withdrawn on March 27, 1945; and butt numbered 3 was withdrawn on October 26, 1945. The internal revenue tax assessed upon liquidation of the entry was paid at the rate of 60 cents per gallon on the date each butt was withdrawn. At the time each butt of the wine was withdrawn, the importer, to safeguard against paying internal revenue tax on that portion of the wine which had evaporated while in bonded warehouse, requested a regauge of the wine which disclosed that the wine in butts numbered 2 and 3 contained 21.4 per centum of alcohol and that in butt numbered 4 was contained 21.3 per centum of alcohol.

On November 16, 1945, the collector demanded that the importer pay an additional sum representing an increase in internal revenue tax on each of the three involved butts of wine from 60 cents per gallon to $2 per gallon, which sum was paid by the importer.

On January 26, 1948, the collector reliquidated the entry without making any change of the rate or amount of duty or internal revenue tax.

The tax here involved is provided for in section 3030 (a) (1) (A) of the Internal Revenue Code (26 U. S. C. 3030 (a) (1) (A)), the pertinent part of which reads as follows:

Upon all still wines, including vermouth, and all artificial or imitation wines or compounds sold as still wine produced in or imported into the United States after June 30, 1940, or which on July 1, 1940, were on any winery premises or other bonded premises or in transit thereto or at any customhouse, there shall be levied, collected, and paid taxes at rates as follows, when sold or removed for consumption or sale:

The tax in effect at the time of the instant importation was at the rate set forth in section 1650 of the Internal Revenue Code (26 U. S. C. 1650), the pertinent part of which reads as follows:

Sec. 1650. War tax rates on certain miscellaneous taxes.

In lieu of the rates of tax specified in such of the sections of this title as are set forth in the following table, the rates applicable with respect to the period beginning with the effective date of title III of the Revenue Act of 1943 * * * shall be the rates set forth under the heading "War Tax Rate":

| Section | Description of Tax | Old Rate | War Tax Rate |
|---------|-------------------|----------|--------------|
| * * * | * * * | * * * | * * * |
| 3030 (a) (1) | Still Wines: | | |
| | (1) Not over 14% of Alcohol | 10 cents per gallon | 15 cents per gallon |
| | (2) Over 14% and not over 21% of Alcohol | 40 cents per gallon | 60 cents per gallon |
| | (3) Over 21% and not over 24% of Alcohol | $1 per gallon | $2 per gallon |
| * * * | * * * | * * * | * * * |

Appellant concedes that appellee is given the right to file a protest against the collector's assessment of internal revenue taxes by section 514, Tariff Act of 1930 (19 U. S. C. 1514). Appellant contends that the involved wine contained over 21 per cent of alcohol at the time of withdrawal and hence the rate of tax should be $2 per gallon. Appellee contends that because the alcohol content of the wine in controversy did not exceed 21.5 per cent alcohol that the correct internal revenue tax should be 60 cents per gallon.

We concur in the holding of the Customs Court that, under the authority of *Vandegrift & Co.* v. *United States*, 3 Ct. Cust. Appls. 176, T. D. 32462, where the wine contains alcohol in perceptible and ascertainable quantities above 21%, it comes within the classification which fixes the higher rate of duty. Appellee's contention that because the wine did not exceed 21.5% of alcohol the 60 cent rate should apply was correctly overruled by the Customs Court.

Section 528 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, 19 U. S. C. 1528, reads in part as follows:

No tax or other charge imposed by or pursuant to any law of the United States shall be construed to be a customs duty for the purpose of any statute relating to the customs revenue, unless the law imposing such tax or charge designates it as a customs duty or contains a provision to the effect that it shall be treated as a duty imposed under the customs laws. Nothing in this section shall be construed to limit or restrict the jurisdiction of the United States Customs Court or of the United States Court of Customs and Patent Appeals.

Appellee points out that prior to the enactment of section 528, *supra*, taxes, however designated, applicable to imported merchandise were held to be taxes on imports, and considered essentially to be customs duties for purposes of determinination and collection. *United States* v. *Mitsui & Company, Ltd.*, 29 C. C. P. A. (Customs) 154, C. A. D. 185. Appellee contends that Congress in enacting section 528 did not intend to remove internal revenue taxes imposed on im-

imported merchandise from the rules applicable to liquidation of entries.

The Customs Court held that the internal revenue tax here in issue is a customs duty for collection purposes and therefore subject to customs laws relating to assessment and collection of duty. Since the procedure by which the collector determines the amounts due the Government upon imported merchandise is by liquidation of the entry, which if unprotested becomes final and conclusive upon the parties after sixty days, the Customs Court held that the collector's demand for payment of additional tax more than sixty days after liquidation of the entry was illegal and void.

It is appellant's contention that the involved tax, being an internal revenue tax, does not accrue, as do customs duties, at the time of importation but should be "levied, collected, and paid" when the wine on which it is imposed is "sold or removed for consumption or sale"; that the calculation of internal revenue tax at the time of liquidation was a decision of the collector with respect to internal revenue taxes which were not yet due; that when the entry herein was liquidated on June 7, 1944, the wine was in warehouse and, while the collector had the right to calculate the amount of internal revenue tax, he had no right to demand its payment because the right to demand the tax did not accrue until the time of removal. Appellant then states that the collector is not required by law to demand payment simultaneously with removal of the imported merchandise, but may do so at a later date. When the demand for payment is made by the collector, urges appellant,—in this case, November 16, 1945—such demand constitutes a "decision" of the collector as to an "exaction" under the jurisdiction of the Secretary of the Treasury, pursuant to section 514 of the Tariff Act of 1930, 19 U. S. C. 1514 ["all decisions of the collector * * * as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury) * * * shall, upon the expiration of sixty days after the date of such * * * decision, * * * be final and conclusive * * * unless the importer * * * paying such * * * exaction * * * shall, within sixty days after, but not before such * * * decision, * * * file a protest in writing with the collector * * *"] and the importer's right to protest ran for sixty days after the date of such decision.

The issue before us then turns on the precise time when the internal revenue tax legally attaches to the imported merchandise. Does it, as appellant urges, attach only when, after removal of the wine for consumption, the collector "decides" the tax is due by demanding its payment, or does it attach, as appellee urges, when the tax assessment is liquidated with the entry? Even if the tax be considered an "exaction," if it legally attaches as an obligation owing by

the importer to the Government at the time of importation, the action of the collector in assessing the tax at the time he liquidates the entry would constitute his "decision" to start the time running toward the finality of that decision.

In *Rogan, Collector,* v. *Conterno,* 132 F. (2d) 726 (9th Cir. 1943), there was involved the precise issue as to when internal revenue taxes on wine legally attach under section 3030 (a) (1) (A), *supra,* and when the tax becomes due and payable. In that case a tax was assessed against the producer of the wine there involved which was destroyed by fire in a bonded winery during 1939. The tax was paid under protest and suit was instituted against the collector for refund of the amount of tax paid. The producer contended that because the statute provides that "there shall be levied, collected, and paid taxes * * * when sold or removed for consumption or sale," and because the wine was never sold or removed for consumption or for sale, the tax never did attach to the wine. The court held that the producer of the wine which was destroyed by fire in his bonded warehouse was properly assessed taxes on the wine; "that the tax is a production tax with the tax applying to all ,wine produced * * * and that deferment of the time of payment is a privilege given by law to the producer."

It will be noted that section 3030 (a) (1) (A), *supra,* reads "Upon all still wines, * * * produced in or imported into the United States * * *." It is apparent therefore that the tax applies equally whether the wine is produced in the United States or is imported into the United States. If, as we believe, the court was correct in the *Rogan* case in holding that the tax attached at the time of production, it follows, *in simili materia* that, as to imported merchandise, the tax attaches at the time of importation. We so hold.

The Customs Regulations of 1931, as amended, provided in subdivision (g) of article 1163½ (T. D. 47942) as follows:

The amount of internal-revenue taxes accruing on the total amount of distilled spirits and wines covered by an entry, will be separately computed and stated in the liquidation or reliquidation of the entry. * * *

Subdivision (k) refers to the liquidation or reliquidation of internal revenue taxes. Regulation 7, Bureau of Internal Revenue, 1937, paragraph 214, provided that "All internal revenue taxes payable on wines imported into the United States * * *, when entered or withdrawn for consumption, will be collected * * * in accordance with Customs Treasury Decision 47942."

The Customs Regulations of 1943, in section 16.1, require that all entries be liquidated. Section 16.2 is entitled "Procedure; notice of liquidation" and in subdivision (b) the method of determining the internal revenue tax on wines is given.

The Customs Manual at section 24.27, entitled "Internal-revenue collections" provides at subsection (e) that "The amount of internal-revenue tax payable on * * * wines shall be separately computed and stated on each entry filed and in connection with each lot prepared and offered for sale." Subsection (f) provides that "The amount of internal-revenue tax accruing on the total amount of * * * wines covered by an entry shall be separately computed and stated in the liquidation or reliquidation of an entry."

Thus it will be seen that the regulations provide for the liquidation and reliquidation of internal revenue taxes on wine and it has been the practice to liquidate all importations of wine.

The internal revenue tax attaches at the time of importation. The tax is actually assessed by the collector in liquidating the entry. If there is no protest filed within sixty days, the liquidation becomes final and conclusive upon the parties. *Phipps* v. *United States,* 22 C. C. P. A. (Customs) 595, T. D. 47601. The enactment of section 528 in the Customs Administrative Act of 1938 effected no change in this procedure of determining and collecting internal revenue taxes. We concur in the holding of the Customs Court that the purpose Congress had in mind in enacting section 528 into law was to make it clear that preferences and exemptions applicable to customs duties were to have no applicability to internal revenue taxes unless Congress expressly said so. The legislative history cited by the Customs Court in its decision is persuasive to that effect.

In the instant case, the collector liquidated the entry on June 7, 1944, as provided by law and the regulations in force at that time. That liquidation became final and conclusive at the expiration of sixty days in the absence of a protest. No protest was filed. The additional tax was demanded by the collector and paid by the importer under protest long after the liquidation of the entry had become final and conclusive. We agree with the court below that such demand for additional tax was illegal and void.

For the reasons stated, the decision and judgment of the Customs Court appealed from is *affirmed.*