## Slip Op. 99-95

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BMW MANUFACTURING CORPORATION, | : |
| Plaintiff, | :    Court No. 97-03-00396 |
| v. | : |
| THE UNITED STATES, | : |
| Defendant. | : |

[Partial summary judgment for defendant.]

Dated:  September 14, 1999

Lamb & Lerch (Sidney H. Kuflik and David R. Ostheimer) for plaintiff.

David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jeanne E. Davidson, Todd M. Hughes and Lara Levinson), Richard McManus, Office of the Chief Counsel, United States Customs Service, of counsel, for defendant.

### OPINION

**RESTANI, Judge:**  This matter is before the court on cross-motions for summary judgment.  Plaintiff seeks recovery of Harbor Maintenance Tax ("HMT")[1] payments collected by the United States Customs Service on merchandise admitted into a foreign trade zone ("FTZ") within the geographical territory of the United States.

---

[1]  The HMT is established by 26 U.S.C. §§ 4461, 4462 (1994).

## I. Jurisdiction

In United States v. U.S. Shoe Corp., 118 S.Ct. 1290 (1998), the Supreme Court held that imposition of the HMT on exports violated the Export Clause of the Constitution.  It also upheld jurisdiction over such challenges in this court, pursuant to 28 U.S.C. § 1581(i).  Id. at 1293-94.  The HMT on admissions into foreign trade zones is paid on a quarterly basis, as was the HMT on exports.  Again, Customs' role as HMT collector is passive; it merely receives payments.  There is no decision-making by Customs under 19 U.S.C. § 1514 which would give rise to protest-denial jurisdiction under 28 U.S.C. § 1581(a).  As no other subsection of § 1581 specifically covers these claims, the court's residual jurisdiction, 28 U.S.C. § 1581(i), applies.  See Miller v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987) (§ 1581(i) jurisdiction proper only when jurisdiction not otherwise available under another subsection of § 1581).

## II. Background[2]

Plaintiff, BMW Manufacturing Corporation ("BMW"), is a United States company incorporated in the State of Delaware.  BMW is a wholly-owned subsidiary of Bayerische Motoren Werke

---

[2]  The statement of facts is derived from plaintiff's opening brief.  Defendant does not dispute the material facts contained therein.

Aktiengesellschaft of Munich, Germany.  BMW has a facility in

Spartanburg, South Carolina, at which it both manufactures motor

vehicles and receives foreign manufactured motor vehicles.  BMW

utilizes U.S. components and foreign components in the vehicles

it manufactures at Spartanburg.  The Spartanburg-manufactured

motor vehicles are sold in the United States, as well as shipped

abroad for sale in other countries.  The foreign-produced motor

vehicles received at the Spartanburg facility are intended for

sale in the U.S.  BMW's Spartanburg facility is a foreign trade

subzone.[3]  Foreign goods admitted to the Spartanburg FTZ,

including complete motor vehicles and automotive components, are

entitled to receive beneficial FTZ treatment.  See generally 19

U.S.C. Chapter 1 and 19 C.F.R. Part 146 (1999).

     Customs regulations mandate the imposition and collection of

the Harbor Maintenance Tax upon the admission of foreign

merchandise into a FTZ.  See 19 C.F.R. § 24.24(e)(2)(iii) (1999).

---

[3]  The difference between a general purpose foreign-trade
zone and a foreign trade subzone is that the former must be made
available for use to multiple entities which desire to operate
within a foreign-trade zone.  If a company is unable to operate
within a general purpose foreign-trade zone, a foreign-trade
subzone can be established for the use of a single specific
company.  See Citgo Petroleum Corp. v. United States Foreign
Trade-Zones Board, 83 F.3d 397, 399 (Fed. Cir. 1996); Nissan
Motor Mfg. Corp., U.S.A. v. United States, 884 F.2d 1375, 1375-76
(Fed. Cir. 1989) (quoting Nissan Motor Mfg. Corp., U.S.A. v.
United States, 12 CIT 737, 738, 693 F.Supp. 1183, 1185 (1988));
Armco Steel Corp. v. Stans, 431 F.2d 779, 788-89 (2d Cir. 1970).

The HMT is to be paid on a quarterly basis by the party responsible for admitting the foreign goods into the FTZ by way of a completed Customs Form 349 ("CF 349").  See id.

Four types of shipments are listed on the CF 349 for which HMT payments must be made on a quarterly basis: exports, domestic movements, passengers, and FTZ admissions.  As the party admitting foreign goods into a FTZ, BMW has been filing CF 349s with its HMT payments for its FTZ admissions of foreign merchandise in the manner prescribed by Customs Regulation § 24.24(e)(2)(iii).

BMW commenced this civil action challenging the imposition and collection of the HMT on the foreign goods it has admitted into its Spartanburg FTZ.  BMW's amended complaint raised four causes of action.  Three of the causes of action – the severability claim, the Port Preference constitutional claim and the Uniformity constitutional claim – have not been briefed, and plaintiff does not desire to brief them in this action.  Rather, plaintiff relies on the presentations in other test cases and raises the claims protectively.  The court has recently found these three legal theories wanting and has dismissed a test case based upon them for failure to state a claim.  See Amoco Oil Co.

v. United States, No. 95-07-00971 (Ct. Int'l Trade Sept. 1, 1999).  The court adopts that opinion for purposes of this case.

### III. Discussion

Plaintiff's argument relies on two premises, the first of which is not disputed.  First, Customs duties on imports are not paid upon admission to a FTZ.  Rather, they are paid if the goods exit the FTZ for entry into the Customs Territory of the United States.  See 19 U.S.C. § 81c(a).  Second, section 4662(f)(1) of Title 26 requires the HMT to be treated as a customs duty for administrative and enforcement purposes, and 19 U.S.C. § 1528 requires that a tax is to be construed as a customs duty if it is to be treated as a customs duty.  Ergo, plaintiff argues that Customs regulations requiring collection of the HMT on admission into a FTZ violates statutory law.  See 19 C.F.R. § 24.24(e)(2)(iii) (requiring HMT to be paid on admission to the FTZ by the party responsible for admission).

A.    Liability upon unloading for HMT on goods
      admitted to FMZ

The starting point is the HMT statute.  It specifies that HMT is to be paid on "any port use" in "an amount equal to 0.125 percent of the value of the commercial cargo involved."  26 U.S.C. § 4461(a) & (b).  The statute specifies that the fee

shall be paid by --

> (A) in the case of cargo entering the United States, the importer,
>
> (B) in the case of cargo to be exported from the United States, the exporter, or
>
> (C) in any other case, the shipper.

26 U.S.C. § 4461(c).  Liability attaches, for port use other than exportation, "at the time of [cargo] unloading."  26 U.S.C. § 4461 (c)(2)(B).

Congress expressly exempted certain port use from the fee. Congress created a "[s]pecial rule for Alaska, Hawaii, and possessions."  26 U.S.C. § 4462(b).  See Amoco, slip op. at 14-15 (given the dependence of Alaska and Hawaii on shipping, the exemption equalizes burdens among the states).  Congress also expressly exempted "bonded commercial cargo entering the United States for transportation and direct exportation to a foreign country."  26 U.S.C. § 4462(d)(1).  The facts of this matter give rise to neither exemption and the statute does not include specific exemption for cargo that is admitted into a foreign trade zone after unloading at a covered port.

As there is no express exemption applicable to its goods in the act establishing the HMT, plaintiff must rely on the FTZ statute to provide relief.  That relief is available only if the HMT is a customs duty.

As recently stated, however, in <u>Texport Oil Co. v. United States</u>, Nos. 98-1352, 98-1353, 98-1373, 1999 WL 538186, at *6 (Fed. Cir. July 27, 1999), "The HMT is a generalized Federal charge for the use of certain harbors."  It is also codified in the Internal Revenue Code.  It is not by its nature a customs duty.  Further, by itself, 26 U.S.C. § 4462(f)(1) does not make the HMT a customs duty.  It merely states, in relevant part:

> Except to the extent otherwise provided in regulations, all administrative and enforcement provisions of customs laws and regulations shall apply in respect of the tax imposed by this subchapter (and in respect of persons liable therefor) as if such tax were a customs duty.

To treat something for administration and enforcement, as something else, does not make it that other thing for all purposes.  Congress could easily have said the HMT was a "customs duty" or a "customs duty for all purposes"; it did not do so.

The next issue is whether 19 U.S.C. § 1528 provides the necessary link.  It states, in relevant part:

> No tax or other charge imposed by or pursuant to any law of the United States shall be construed to be a customs duty for the purpose of any statute relating to the customs revenue, unless the law imposing such tax or charge designates it as a customs duty or contains a provision to the effect that it shall be treated as a duty imposed under the customs laws.

As the previous discussion indicates, Congress did not designate the HMT a customs duty.  Is it enough that it is treated as a duty for administration and enforcement?  The answer is "no."  To be treated as a duty for purposes of the Customs laws denotes a much broader and more substantive treatment than treatment for mere administration or enforcement purposes.  See U.S. Shoe Corp. v. United States, 20 CIT 206, 208 (1996) (purpose of 26 U.S.C. § 4462(f)(1) was to specify which agency has responsibility for collecting and processing HMT payments).

Plaintiff also ignores the purpose of § 1528.  Its purpose is "to make it clear that preferences and exemptions applicable to customs duties [are not applicable] to internal revenue taxes unless Congress expressly [says] so."  United States v. Westco Liquor Prods. Co., 38 CCPA 101, 107 (1951).  Congress has not said expressly that FTZ exemptions are applicable to the HMT.  The language of 26 U.S.C. § 4462(f)(1) does not satisfy the express language requirement of 19 U.S.C. § 1528.  Cf. Chicago Heights Distrib. Co. v. United States, 55 Cust. Ct. 254, 259 (1965) (distinguishing "collection purposes" from an "exemption" or "preference" covered by § 1528).

Furthermore, plaintiff's construction is at odds with the purpose of the HMT.  Although constructed as an ad valorem tax on

merchandise, the purpose of the HMT is to charge for port use.

See Texport, 1999 WL 538186, at *3.  The HMT applies whether the

goods are exported, imported or shipped between domestic ports.

See id.  To have goods escape the HMT,[4] even though the port use

is the same as for other goods, is not within the intent of

Congress.[5]  In addition, to further its purpose, Congress

provided that the HMT is to attach at the time of unloading

(except for exports).  26 U.S.C. § 4461(c)(2)(B).  To delay

liability until the goods (as entered or transformed) leave the

---

[4]  Under plaintiff's interpretation goods may "escape" the
HMT because those products entering the FTZ duty-free need not be
later imported into the Customs territory of the United States.
See, e.g., Citgo, 83 F.3d at 399 ("a company that ships raw
materials into a foreign-trade zone, processes the raw materials
into finished products, and then exports the finished products is
not required to pay duties on the raw materials, as they are
deemed never to have entered the customs territory of the United
States.").

[5]  The one exception to this general intent states that the
Harbor Maintenance Tax "shall not apply to bonded commercial
cargo entering the United States for transportation and direct
exportation to a foreign country."  26 U.S.C. § 4462(d)(1).
Legislative history supports the conclusion that this exception
addressed particularly competitive concerns not implicated by the
issue at hand.  S. Rep. No. 228, at 229-30 (1986), reprinted in
1986 U.S.C.C.A.N. 6705, 6742 (exempting "bonded cargo entering
the U.S. for transportation and direct exportation to a foreign
country.  This exemption does not apply (a) if Canada imposes a
similar port use charge or (b) to U.S. ports (or classes of
cargo) if the mandated cargo diversion study . . . shows that the
charge is not likely to result in a significant diversion of
cargo or that the nonapplicability of the charge to a given U.S.
port would cause economic harm to another U.S. port.").

FTZ and <u>perhaps</u> enter the United States Customs territory conflicts with this express provision.[6]

Accordingly, the court concludes the HMT must be paid on goods unloaded at covered ports for admission into FTZs, in accordance with 19 C.F.R. § 24.24(e)(2)(iii).  The only question remaining is whether the payor specified in 19 C.F.R. § 24.24(e)(2)(iii) is the one provided by statute.

B.    Person responsible for HMT on merchandise
      admitted into FTZ

The answer to the question now posed depends in part on whether merchandise admitted into an FTZ is cargo "entering the United States."  26 U.S.C. § 4461(c)(1)(A).  In such a case the HMT is to be paid by the "importer."  If it is not, the HMT is to be paid by the "shipper."  26 U.S.C. § 4461(c)(1)(C).[7]

If the statute stated "entering the Customs Territory of the United States," this matter would be largely resolved.  The goods, not being unloaded for immediate entry into the United

---

[6]  Plaintiff's contention that HMT is <u>paid</u> quarterly, not at the time of unloading, is irrelevant.  Liability attaches at unloading, before goods can be made into new products in the FTZ.

[7]  The court also does not decide whether liability attaches if bonded sealed merchandise enters an FTZ.  This case does not present such a factual scenario.  Nor is the court concerned as to whether Customs' forms support the court's reading of the statute.  The forms, like the regulations, must conform to the statute, not the converse.

States Customs Territory, but being an "other case," would give rise to shipper liability. Of course, the statute dispenses with these fine words of art and merely states "entering the United States." At first, it is not easily decipherable whether Congress meant the geographical United States or its Customs Territory. The word "entering," which is common Customs parlance, implies that the Customs Territory is meant, but it is a mere implication, and not a strong one at that. As defendant points out, the word "enter" has also been used in reference to admission to an FTZ. See e.g., Nissan Motor Mfg. Corp., 12 CIT at 744, 693 F. Supp. at 1189 ("right to enter production machinery into [a] zone without paying duty."); see also S. Rep. No. 81-1107, at 1 (1949), reprinted in U.S.C.C.A.N. 2533, 2533 (referring to merchandise "entered" into an FTZ).

Plaintiff notes on the other hand, that for several excise tax purposes "United States" is defined to include specifically FTZs. See 26 U.S.C. §§ 4612(a)(4)(C) (1994) and 4682(e)(2) (1994). It also notes that there is no specific inclusion of FTZs in the more general definition of "United States" found at 26 U.S.C. § 7701(a)(9) (1994). This is a strong argument. Congress clearly knows how to include FMZs in the definition of the United States for tax purposes, if it so chooses.

Further, who the "importer" is when there is no actual importation or attempted importation is a somewhat difficult question to answer. Customs argues that its regulations answer the query by defining importer as "the person . . . responsible for bringing merchandise into the zone." 19 C.F.R. § 24.24(e)(2)(i). In fact, the regulations do not state that this is a definition of "importer." Customs' general regulation does not include this as a category of "importer."[8]

As HMT must be paid on the FTZ admissions, one might ask, who pays the HMT if there is no "importer" for FTZ admissions? As indicated, except for imports and exports, the shipper is liable for HMT. 26 U.S.C. § 4461(c)(1)(C). With regard to domestic shipments, Customs' regulations indicate a shipper is the party paying the freight. 19 C.F.R. § 24.24(e)(1)(i). As a

---

[8] 19 C.F.R. § 101.1 (1999) defines importer as:

> [T]he person primarily liable for the payment of any duties on the merchandise, or an authorized agent acting on his behalf. The importer may be:
> (1) The consignee, or
> (2) The importer of record, or
> (3) The actual owner of the merchandise, if an actual owner's declaration and superseding bond has been filed in accordance with § 141.20 of this chapter, or
> (4) The transferee of the merchandise, if the right to withdraw merchandise in a bonded warehouse has been transferred in accordance with subpart C of part 144 of this chapter.

shipper is a person responsible for procuring movement of goods,[9] this regulatory definition comports with common meaning. Unlike "importer," there is no general regulatory definition of "shipper."

The person paying the freight, however, may be either the seller or buyer.[10] With domestic shipments, this creates no problem, but as to shipments into an FTZ a collection problem might arise if the person responsible for the freight is interpreted to be the foreign seller.[11]

---

[9]     Black's Law Dictionary defines "shipper" as:

>    One who ships goods to another. One who engages the services of a carrier of goods. One who tenders goods to a carrier for transportation; a consignor. The owner or person for whose account the carriage of goods is undertaken.

>    Black's Law Dictionary 1378 (6th ed. 1990).

[10]     Under a carriage, insurance, and freight ("C.I.F.") contract, the price includes in a lump sum the cost of the goods and the insurance and freight to the named destination. Black's Law Dictionary 242. If the contract has a free on board ("F.O.B.") delivery term, the seller ships the goods and bears the expense and risk of loss to the F.O.B. point designated. Id. at 642.

[11]     One might argue that the buyer always pays the freight, because in a C.I.F. contract the price paid by the buyer includes the freight and in an F.O.B. contract, the freight is paid directly by the buyer. See John H. Jackson, William J. Daley, & Alan O. Sykes, Legal Problems of International Economic Relations 54 (3d ed. 1995) (comparing responsibilities under C.I.F. and
(continued...)

The parties declined to brief the issue of shipper liability and have not advised if the plaintiff paid the freight on the FTZ admissions at issue, or whether the sales contracts placed responsibility for freight with the seller. In any case, the court doubts that any reasonable interpretation of the statute would permit the shifting of liability, by means of a simple contractual arrangement, beyond Customs' practical ability to collect the HMT.

In accordance with Customs' broad authority to design procedures for collection of HMT, it may be permissible for Customs to require that the person responsible for admission to an FTZ assure that the HMT payment is made. This may be so even if another party was responsible, pursuant to contract, for the freight payment, and is, therefore, nominally the "shipper."

The statute is not entirely clear as to which party is responsible for HMT on admissions into an FTZ. In such a case, the court must examine the reasonableness of the agency's interpretation. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984); see also United States v. Haggar Apparel Co., 119 S.Ct. 1392, 1400 (1999) (Chevron analysis to be applied to Customs classification if

----

[11](...continued)
F.O.B. terms).

Customs promulgates regulation interpreting ambiguous statute). While the interpretation of the statute presented to the court by the government is not particularly convincing, the regulations themselves may reasonably carry out the statute by simply providing that the person responsible for FTZ admission pay the HMT. As indicated, the court is unaware if plaintiff paid the freight charge, in which case plaintiff would be liable, no matter which interpretation of the statute the court accepts.

Accordingly, the parties will inform the court within 20 days hereof if there is agreement as to plaintiff's responsibility for HMT under this opinion. If no further dispute exists, the parties shall submit a form of judgment. If a dispute exists, a briefing schedule shall be submitted.

                                    _____
                                            Jane A. Restani
                                               JUDGE


Dated: New York, New York

       This 14th day of September, 1999.