**Slip Op. 00-55**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
_____
                                :
CITGO PETROLEUM CORPORATION,    :
                                :      Court No. 94-01-00023
             Plaintiff,         :
                                :
          v.                    :
                                :
THE UNITED STATES,              :
                                :
             Defendant.         :
_____   :
```

[Judgment for plaintiff.]

Dated:  May  18, 2000

Dennis T. Snyder, P.A. (Dennis T. Snyder) for plaintiff.

David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Lara Levinson and Jeffrey A. Belkin), Richard McManus Office of the Chief Counsel, United States Customs Service, of counsel, for defendant.

**OPINION**

**RESTANI, Judge:** This matter challenging the imposition of the Harbor Maintenance Tax ("HMT") upon aircraft fuel withdrawn from a bonded warehouse for use in international flight is before the court on Cross Motions for Summary Judgment, pursuant to USCIT Rule 56.  The court finds that the fuel cargo at issue is exempt from the tax.

FACTS

Plaintiff, Citgo Petroleum Corporation, is a domestic corporation that imports jet turbine fuel for sale to foreign and domestic airlines engaged in international traffic from, to and through airports in the United States.  Pl.'s Statement of Undisputed Material Facts ¶ 1 (hereinafter "Pl.'s Statement").  Plaintiff imported jet turbine fuel into Port Everglades, Florida.  Id. at ¶ 3.  During the course of 1991, plaintiff discharged five cargoes of jet turbine fuel into a United States Customs Service bonded storage tank at that port.  Id. at ¶¶ 2-3.  At the time of unloading, plaintiff filed warehouse entries and paid the HMT upon those cargoes.  Id. at ¶ 3.

Plaintiff subsequently withdrew the fuel and transported it to receiving aircraft.  Pl.'s Statement ¶¶ 4 & 6.  When technical requirements for duty-free treatment were met, plaintiff claimed entitlement to duty-free and tax-free treatment pursuant to 19 U.S.C. § 1309 (1994) for fuel for some receiving aircraft.[1]  Id. at ¶ 6.  For aircraft that

---

[1]  There appears to be no dispute as to the entitlement to § 1309 exemptions for the entries at issue.  The only issue presented to the court is whether the HMT is within the exemption.

Customs determined were not entitled to such exemption, plaintiff tendered duties and taxes to Customs.  Id. at ¶ 9.

Customs subsequently liquidated the entries.  Pl.'s Statement ¶ 11.  After liquidation, plaintiff protested and requested refunds of the HMT, alleging that the fuel was exempt from the HMT pursuant to 19 U.S.C. § 1309.  Pl.'s Mot. for Summ. J., Tab A, at 1.  Customs denied the protest.  Id. Plaintiff brings this action challenging the denial of its protest.  Jurisdiction lies under 28 U.S.C. § 1581(a) (1994). Amoco Oil Co. v. United States, 63 F. Supp.2d 1332, 1334 (Ct. Int'l Trade 1999); Thomson Consumer Elecs., Inc. v. United States, 62 F. Supp.2d 1182, 1184 (Ct. Int'l Trade 1999).

The issue before the court is whether the HMT paid by a domestic corporation upon cargoes of jet fuel imported into bonded warehouses and later withdrawn as supplies for aircraft engaged in foreign trade are "internal revenue taxes" within the meaning of 19 U.S.C. § 1309(a).  Section 1309 provides that supplies for "aircraft registered in the United States and actually engaged in foreign trade" may "be withdrawn . . . from any customs bonded warehouse . . . free of duty and internal-revenue tax."  19 U.S.C. § 1309(a)(1)(C).

## DISCUSSION

First, it is clear that the HMT is a <u>tax</u>.  Because the HMT is a tax, it was declared unconstitutional as to exports. <u>United States v. U.S. Shoe Corp.</u>, 523 U.S. 360, 362-63 (1998). The HMT is set forth in the Internal Revenue Code.  <u>Id.</u> at 367.  The court also found the HMT to be an internal revenue tax in <u>U.S. Shoe Corp. v. United States</u>, 20 CIT 206, 208 (1996).  The court incorporated the <u>U.S. Shoe</u> opinion in <u>IBM Corp. v. United States</u>,  No. 94-10-00625, 1998 WL 325156 (Ct. Int'l Trade June 17, 1998), <u>rev'd on other grounds</u>, 201 F.3d 1367 (Fed. Cir. 2000).  In <u>IBM</u>, the appellate court accepted, at least for the purpose of argument, that the tax was an internal revenue tax.  <u>IBM</u>, 201 F.3d at 1371. It stated a bit more, however.

> Because Congress codified the HMT as part of Title 26 of the United States Code, entitled "Internal Revenue Code," we may reasonably conclude that Congress considered the HMT to be an internal revenue tax.  Furthermore, while it may be true that the constitutionality of the HMT was challenged because the HMT taxed goods exported out of the United States, the HMT is clearly derived from internal sources - the U.S. exporter - rather than external sources - the foreign recipient; HMT revenues were collected in the United States from domestic companies based on their use of ports and harbors in this country.  Thus both the structure and the content of the HMT point toward it being an internal revenue tax, and thus entitled on refund to the interest award provided under § 2411.

IBM, 201 F.3d at 1371-72.  This is also consistent with the court's decision in BMW Mfg. Corp. v. United States, in which the court found that the HMT was not a customs duty.  69 F. Supp.2d 1355, 1358 (Ct. of Int'l Trade 1999).  BMW also recognized that the HMT is a generalized charge for port use. Id.; see also Texport Oil Co. v. United States, 185 F.3d 1291, 1297 (Fed. Cir. 1999) ("The HMT is a generalized Federal charge for the use of certain harbors.")  There is nothing inconsistent, however, between the general purpose of the charge and its status as an internal revenue tax.  As the court recognized in BMW, Congress wanted the HMT charge applied as widely as possible.  BMW, 69 F. Supp.2d at 1358-59.

Against this background, the court addresses whether Congress created an exemption to the HMT tax applicable in this case in order to serve some other purpose.  Congress has provided some exemptions in the HMT act itself for various reasons, including commercial competitiveness.  See, e.g. 26 U.S.C. § 4462(d)(1) (1994) (relating to bonded commercial cargo); see also BMW, 69 F. Supp.2d 1359 n.5.  Plaintiff claims no exemption in the HMT statute itself.  Plaintiff argues, however, that on its face 19 U.S.C. § 1309, which is not in the Act establishing the HMT, would appear to provide an applicable exemption.  The court in BMW recognized that

other general exemptions found outside the HMT might apply. BMW, 69 F. Supp.2d at 1358.

Both parties agree that the key term "internal revenue tax" found in § 1309 does not have an invariable meaning and that statutory purpose is the key. United States v. Leeb, 20 F.2d 355, 356 (2d Cir. 1927). As indicated, the purpose of the HMT is clear: to maintain harbors by charging for nearly every port use. 26 U.S.C. § 4461 (1994). Section 1309 has an equally evident purpose of promoting equal footing between U.S. vessels and aircraft with foreign vessels and aircraft. S. Rep. No. 86-1491 (1960), reprinted in 1960 U.S.C.C.A.N. 2780, 2785 (quoting with approval from the Bureau of the Budget report that "the original and main purpose for the exemption from duty and taxes of ships' supplies was to place U.S. vessels engaged in foreign trade on an equal footing with foreign vessels. Such exemption extends back to the 19th century tariff acts and was eventually extended to aircraft.") Section 1309's long history will be recounted in brief.

Section 22 of the Act of July 14, 1862, granted the privilege of duty free withdrawal of articles from bonded warehouses to be used as vessels-of-war supplies, if the United States was granted reciprocal privileges. Act of July 14, 1862, § 22, 12 Stat. 543, 560. Section 16 of the Act of

June 26, 1884, extended the privilege to any vessel engaged in foreign trade.  Act of June 26, 1884, § 16, 1 Rev. Stat. Supp. 440, 443. Section 16 of the Tariff Act of 1897 extended the privilege further to duties and internal revenue taxes on vessel supplies of either foreign or domestic production. Tariff Act of 1897, § 16, 30 Stat. 151, 207 (July 24, 1897). Now, of course, the privilege applies to aircraft as well as vessels.  See 19 U.S.C. § 1309.  The privilege is also reflected in international agreements to which the United States is a party, as befits the reciprocal privilege history of the provision.

Article 24(a) of the Convention on International Civil Aviation (the "Chicago Convention"), exempted fuel and other supplies aboard aircraft in international flight status from taxation.  Convention on International Civil Aviation, opened for signature Dec. 7, 1944, art. 24(a), 61 Stat. 1180, 1186, 15 U.N.T.S. 295, 310 (entered into force Apr. 4, 1947).  The International Civil Aviation Organization ("ICAO"), established by the Convention, extended the exemption to fuel and other consumable technical supplies taken abroad. Policies on Taxation in the Field of International Air

Transport, Section I(1), ICAO Doc. 8632 (3d ed. 2000)

[hereinafter "Policies on Taxation"].[2]

Defendant argues that the international agreements do not

apply or inform the interpretation of 19 U.S.C. § 1309 because

the payor of the tax is a domestic corporation.  That does not

appear to be a limitation within the agreements.[3]  The focus

of the agreements, as with § 1309,  seems to be reciprocal

benefits for aircraft in international flight.  The ultimate

purchaser, no doubt, would have higher fuel prices passed on

to it.

Also, the government argues that, because pursuant to 26

U.S.C. § 4461(c)(2)(B) liability for the HMT attaches at the

time of unloading of the imported fuel, the exemption found in

the international agreements does not apply.  The ICAO

policies at issue, however, clearly specify refunds of duties

or taxes previously paid.  See Policies on Taxation, Section

---

[2]  This principle has remained consistent since 1966, when
the ICAO first adopted this policy.  See Policies on Taxation
in the Field of International Air Transport, Section I, ICAO
Doc. 8632-C/968 (2d ed. 1994 and 1st ed. 1966).

[3]  This argument seems somewhat nonsensical.  Taxes are
usually paid by domestic parties and customs duties by United
States' importers.

I(1).[4]

_____

    [4]  Section I of the applicable policy reads in relevant
part:

The Council resolves that:

1.  With respect to **taxes on fuel, lubricants or other
    consumable technical supplies**:

    a)    when an aircraft registered in one Contracting
          State, or leased or chartered by an operator of
          that State, is engaged in international air
          transport to, from or through a customs
          territory of another Contracting State its fuel,
          lubricants and other consumable technical
          supplies shall be exempt from customs or other
          duties on a reciprocal basis, or alternatively,
          in the cases of fuel, lubricants and other
          consumable technical supplies taken on board as
          per subparagraphs ii) or iii) <u>such duties shall
          be refunded</u>, when:

                          * * *

          ii)    <u>the fuel, etc., is taken on board for
                 consumption during the flight</u> when the aircraft
                 departs from an international airport of that
                 other State either for another customs territory
                 of that State or for the territory of any other
                 State, provided that the aircraft has complied,
                 before its departure from the customs territory
                 concerned, with all customs and other clearance
                 regulations in force in that territory;

                          * * *

    b)    the foregoing exemption being based upon
          reciprocity, no Contracting State complying with
          this Resolution is obliged to grant to aircraft
          registered in another Contracting State or aircraft
          leased or chartered by an operator of that State any
          treatment more favourable than its own aircraft are
                                                (continued...)

The resolution at issue specifically covers "import, export, excise, sales, consumption, and internal duties and taxes <u>of all kinds</u> levied upon the fuel, lubricants and other consumable technical supplies."  <u>Id.</u> at Section I(1)(d)(emphasis added).  There appears to be no limit to the exemption based on whether it is the airline or the supplier that must pay the tax or when it attaches.

_____

[4](...continued)
   entitled to receive in the territory of that other State;

c)  notwithstanding the underlying principle of reciprocity, Contracting States are encouraged to apply the exemption, to the maximum extent possible, to all aircraft on their arrival from and departure for other States;

d)  <u>the expression "customs and other duties" shall include import, export, excise, sales, consumption and internal duties and taxes of all kinds</u> levied upon the fuel, lubricants and other consumable technical supplies; and

e)  the duties and taxes described in d) above shall include those levied by any taxing authority within a Contracting State, whether national or local. These duties and taxes shall not be or continue to be imposed on the acquisition of fuel, lubricants or consumable technical supplies used by aircraft in connection with the international air services except to the extent that they are based on the actual costs of providing airports or air navigation facilities and services and used to finance the costs of providing them[.] [Emphases added.]

<u>Policies on Taxation</u>, Section I(1), ICAO Doc. 8632.

Moreover, 19 U.S.C. § 1309 is not limited by the drawback statute at issue in <u>Texport</u>, 185 F.3d at 1296-97.  19 U.S.C. § 1313 (1994) which was at issue there, only allowed drawback of duties paid <u>upon importation</u>.  There is nothing in either the HMT statute or 19 U.S.C. § 1309 which indicates an intention to narrow § 1309 so that it would only allow refund of duties or taxes <u>paid on importation</u>.  Nor is there any sign that Congress wished to disregard specific international commitments on aircraft fuel supplies.  Rather, it seems that 19 U.S.C. § 1309 is broadly worded to be consistent with the international agreements discussed herein.[5]  The court would be remiss in adopting a narrow reading.  Both the plain words of § 1309 and its purpose indicate a refund of the taxes paid should be made.

---

[5]  <u>See</u> <u>supra</u> note 3.

Accordingly, in each instance at issue herein in which plaintiff qualified for the 19 U.S.C. § 1309 exemption, a refund of the HMT shall be made.


                                    _____
                                         Jane A. Restani
                                             JUDGE


Dated:  New York, New York

        This 18th day of May, 2000.