**Slip Op. 00-173**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                :
AKER GULF MARINE,               :
                                :
              Plaintiff,        :
                                :   Court No. 99-09-00604
         v.                     :
                                :
UNITED STATES,                  :
                                :
              Defendant.        :
_____:

[Harbor Maintenance Refund Suit Dismissed.]

Dated:  December 28, 2000

Lamb & Lerch (David R. Ostheimer and Sidney H. Kuflik) for plaintiff.

David W. Ogden, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jeffrey A. Belkin), Richard McManus, Office of General Counsel, United States Customs Service, of counsel, for defendant.

## OPINION

**RESTANI, Judge:**  This matter is before the court on defendant's motion to dismiss for failure to state a claim and on plaintiff's motion for partial summary judgment.  For purposes of the motions, the court accepts as true plaintiff's allegations that it shipped floating, drilling and production platforms from the port of Corpus Christi, Texas, to a location on the Outer Continental Shelf ("OCS"); that the shipping was by way of

attachment to a tug boat; and that it paid Harbor Maintenance Tax ("HMT") on the platforms.  See Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).  Plaintiff seeks refund of the HMT.  The court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (1994).

Plaintiff presents three bases for refund in its motion.[1] One, it alleges that shipments to the OCS are exports and the HMT on exports has been declared unconstitutional in United States v. U.S. Shoe Corp., 523 U.S. 360 (1998).  Two, pursuant to 26 U.S.C. § 4461 et seq. (1994), the HMT is imposed on commercial cargo "loaded on" commercial vessels and plaintiff alleges that the platforms are not commercial cargo, nor is towing by a tugboat a "loading on."  Three, Customs regulation 19 C.F.R. § 24.24(e) (1999) imposes HMT liability on domestic shipment only between ports and the OCS is admittedly not a port.

The court rejects all three theories.

I.    HMT on shipments to the OCS is not prohibited by the
      Constitution.

The parties have cited a number of statutory provisions which include or do not include the OCS within the definition of

---

[1]  Other bases for plaintiff's refund claim alleged in the complaint were rejected in previous test litigation.  Plaintiff agrees to be bound by the final resolution of those cases.  Thus, this dispute is limited to the three theories discussed herein.

United States for one or another purpose.  These statutes are largely irrelevant to the issue of what is an "export" for purposes of the Export Clause of the Constitution.[2]  Statutes cannot change the meaning of the Constitution.

The Export Clause was adopted to serve the broad purpose of "forbid[ding] federal taxation of exports." IBM Corp. v. United States, 59 F.3d 1234, 1239 (Fed. Cir. 1995) (quoting Dep't of Revenue v. Ass'n of Washington Stevedoring Cos., 435 U.S. 734, 758 (1978)), aff'd, 517 U.S. 843 (1996).[3]  The Supreme Court in IBM noted that "the Export Clause . . . specifically prohibits Congress from regulating *international commerce* through export taxes, disallows any attempt to raise federal revenue from exports, and has no direct effect on the way the States treat imports and exports."  517 U.S. at 859 (emphasis added).  Thus, the clause refers only to international commerce.  See Florida Sugar Mktg. and Terminal Ass'n, Inc. v. United States, 220 F.3d 1331, 1335-37 (Fed. Cir. 2000)(finding Export Clause does not bar

---

[2]  Art. I, § 9, cl. 5 of the Constitution states: "[N]o Tax or Duty shall be laid on Articles exported from any State."

[3] The Framers sought to "alleviate the fear of northern repression through taxation of southern exports . . . by completely denying to Congress the power to tax exports at all." Carnival Cruise Lines, Inc. v. United States, 200 F.3d 1361, 1364 (Fed. Cir.) (quoting IBM, 517 U.S. at 861), cert. denied, 120 S. Ct. 2741 (2000).

tax on interstate shipments), <u>petition for cert. filed</u>, 69 U.S.L.W. 3298 (U.S. Oct 25, 2000) (No. 00-660).

Shipments to the OCS involve no commerce with foreign countries. An "export" for purposes of the Export Clause "must necessarily originate from one jurisdiction and terminate in another jurisdiction." <u>Id.</u> at 1338. "[T]he destination of the shipment must be outside the jurisdiction of the federal government . . . ."[4] <u>Id.</u> Shipments to the OCS are not "exports" in the Export Clause sense of the word. They are not "shipments to foreign countries." <u>Id.</u> at 1337. Thus, HMT on such shipments to the OCS is not unconstitutional.

II.  The HMT Act provides for HMT on shipments from a domestic port to the OCS.

26 U.S.C. § 4461 reads as follows:

**(a) General rule.**
   There is hereby imposed a tax on any port use.

**(b) Amount of tax.**
   The amount of the tax imposed by subsection (a) on any port use shall be an amount equal to 0.125 percent of the value of the commercial cargo involved.

**(c) Liability and time of imposition of tax.**

   **(1) Liability.**

---

[4]  The OCS is subject to the U.S. Constitution and all laws of the United States. 43 U.S.C. § 1333(a)(1). Thus, whether or not it is part of the United States, the OCS is not beyond its jurisdiction for these purposes.

The tax imposed by subsection (a) shall be paid by –
(A) in the case of cargo entering the United States, the importer,
(B) in the case of cargo to be exported from the United States, the exporter, or
(C) in any other case, the shipper.

**(2) Time of imposition**.
Except as provided by regulations, the tax imposed by subsection (a) shall be imposed –
(A) in the case of cargo to be exported from the United States, at the time of loading, and
(B) in any other case, at the time of unloading.

26 U.S.C. § 4462(a) reads in relevant part:

**(1) Port use**.
The term "port use" means –
(A) the loading of commercial cargo on, or
(B) the unloading of commercial cargo from,

a commercial vessel at a port.

* * *

**(3) Commercial cargo.**

**(A) In general.**
The term "commercial cargo" means any cargo transported on a commercial vessel, including passengers transported for compensation or hire.

* * *

**(4) Commercial vessel.**

**(A) In general.**
The term "commercial vessel" means any vessel used –

> (i) in transporting cargo by water for compensation or hire, or
> (ii) in transporting cargo by water in the business of the owner, lessee, or operator of the vessel.

* * *

It is clear from these provisions that Congress intended to tax for general port use by means of a tax on commercial cargo. BMW Mfg. Corp. v. United States, 69 F. Supp.2d 1355, 1358 (Ct. Int'l Trade 1999) (citing Texport Oil Co. v. United States, 185 F.3d 1291, 1297 (Fed. Cir. 1999)). See also Citgo Petroleum Corp. v. United States, 104 F. Supp.2d 106, 108 (Ct. Int'l Trade 2000). The parties agree that the port of Corpus Christi was used to ship the platforms to the OCS. Under the terms of the statute, "commercial cargo" is broadly defined as anything (with exceptions not applicable here) transported on a commercial vessel. Clearly a tug boat was hired to transport the platforms. For these purposes it is a commercial vessel. Plaintiff's statutory theory rests on the argument that the platforms were not "on" the tugboat, but were beside it, and therefore there is no covered "port use." That is, the cargo was not loaded or transported "on" a commercial vessel, as required by 26 U.S.C. § 4462.

The court will not rest the issue of applicability of the

tax on a narrow definition of a statutorily undefined preposition, which in common usage has a broad meaning.[5] Plaintiff cannot argue seriously that cargo "inside" a vessel is not to be taxed.  In context, "next to," "beside," "behind" may be equivalent to "on," just as much as "inside" is.  What Congress intended was to tax cargo transported by means of a commercial vessel from a port of the United States.  There is no indication that Congress meant any distinction based on the physical means of connecting the cargo to the vessel, i.e., gravity versus a cable.

Further, the fact that the tax is imposed at the time of unloading under 26 U.S.C. § 4461(c)(2)(B) proves nothing.  The statute does not provide that the cargo must be unloaded at a port, or include any other details about the unloading.  The tug boat gave up its cargo at the OCS.  Under § 4461(c)(2)(B), at that time the tax was imposed.  Congress intended to prevent double taxation at time of loading and unloading where domestic ports are at both ends of the shipping transaction. See 26 U.S.C. § 4462(g)(1) ("Only 1 tax shall be imposed . . . with respect to

---

[5]  See Black's Law Dictionary 1088 (6th ed. 1990):

On.  Upon; as soon as; near to; along; along side of; adjacent to; contiguous to; at the time of; following upon; in; during; at or in contact with upper surface of a thing.

the loading on and unloading from, or the unloading from and the loading on, the same vessel of the same cargo.").[6]   Section 4461(c)(2)(B) does not prevent taxation where only one domestic port is involved.

III.  Customs Regulations do not exempt shipments to the
      OCS from the HMT.

Customs HMT Regulations at times muddle what appears clear from the statute.  19 C.F.R. § 24.24(a) reads:

> *Fee*.  Commercial cargo loaded on or unloaded from a commercial vessel is subject to a port use fee of 0.125 percent (.00125) of its value if the loading <u>or</u> unloading occurs at a port within the definition of this section, unless exempt under paragraph (c) of this section or one of the special rules in paragraph (d) of this section is applicable. (emphasis added)

This reflects the statutory provisions, as does much of the remainder of the regulation.  Unfortunately, when it came time to provide the specifics of collection with respect to domestic vessel movements in § 24.24(e), Customs did not follow the statutory language.  Rather, it added the language "to be transported between ports in the U.S."  19 C.F.R. § 24.24(e)(1)(i) (2000).  If read to exempt these shipments from

---

[6] <u>See also</u> S. Rep. No. 99-228, at 9-10 (1986), <u>reprinted in</u> 1986 U.S.C.C.A.N. 6639, 6714 ("Only one port use charge is to be imposed with respect to the transportation of the same cargo on the same vessel.  Also, the port use charge is to be imposed only once where the same cargo is loaded and reloaded at the same port.").

liability, this language conflicts with the broad liability provided by the statute.  When subsection (e) is read with the remainder of § 24.24, including subdivision (a), the regulation becomes ambiguous.  That is, one does not know if the regulatory drafters did not consider shipments to the OSC "domestic" shipments, if the provision merely was to clarify the time for collection of duties where two port uses were involved without saying anything about one port uses, or if there was some other intention.  As the statute is clear in this regard, the ambiguous regulatory provision does not control.

Accordingly, this action is dismissed.


_____
Jane A. Restani
Judge


Dated:  New York, New York

This 28th day of December, 2000.