**INTERNATIONAL BUSINESS MACHINES CORPORATION, Plaintiff–Appellee,**

v.

**UNITED STATES, Defendant–Appellant.**

**No. 98–1590.**

United States Court of Appeals, Federal Circuit.

Jan. 19, 2000.

William D. Outman, II, Baker & McKenzie, of Washington, DC, argued for plaintiff-appellee. With him on the brief were Kevin M. O'Brien, Teresa A. Gleason, and Michael E. Murphy.

Lara Levinson, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, and Todd M. Hughes, Attorney. Of counsel on the brief was Richard McManus, Office of the Chief Counsel, United States Customs Service, of Washington, DC.

Patrick D. Gill, Rode & Qualey, of New York, New York, for amicus curiae Capital–Mercury Shirt Corp. Melvin S.

Schwechter, LeBoeuf, Lamb, Greene & MacRae, L.L.P., of Washington, DC, for amicus curiae Rapid Industrial Plastics Co. Inc. Steven H. Becker, Coudert Brothers, of New York, New York, for amicus curiae Alfred C. Toepfer International, Inc. Peter Jay Baskin, Sharretts, Paley, Carter & Blauvelt, P.C., of New York, New York, for amicus curiae Bunge Corporation. Steven P. Florsheim, Grunfeld, Desiderio Leibowitz & Silverman LLP, of New York, New York for amicus curiae Mondial International Corp. Munford Page Hall, II, Dorsey & Whitney, LLP, of Washington, DC, for amicus curiae New Holland North America, Inc. Barry E. Cohen, Crowell & Moring, LLP, of Washington, DC for amicus curiae Elliott Turbomachinery Company. Brian S. Goldstein, Graham & James, LLP, of New York, New York, for amici curiae AgrEvo USA Company and Nor-Am Chemical Company. Gilbert Lee Sandler, Sandler, Travis & Rosenberg, P.A., of Miami, Florida, for amicus curiae Oshkosh B'Gosh, Inc. James S. O'Kelly, Barnes, Richardson & Colburn, of New York, New York, for amicus curiae Firmenich, Inc.; of counsel was Christopher E. Pey. Mark Stuart Zolno, Katten, Muchin & Zavis, of Chicago, Illinois, for amicus curiae Perseco Asia–Pacific, L.P.

Leslie Alan Glick, Porter, Wright, Morris & Arthur, of Washington, DC, for amici curiae CombiBloc, Inc., Carter–Wallace, Inc., Allied Mineral, Inc., Techneglas, Inc., and Diehl, Inc.

Jerry P. Wiskin, Simons & Wiskin, of New York, New York, for amicus curiae Cam USA, Inc.

Before PLAGER, CLEVENGER, and RADER, Circuit Judges.

PLAGER, Circuit Judge.

The United States ("the Government") appeals a judgment of the United States Court of International Trade, which awarded interest on refunds of the Harbor Maintenance Tax ("HMT"). The Supreme Court had earlier held that the HMT, as applied to exports, violates the Export Clause of the United States Constitution, and cannot be lawfully collected.[1] This case was filed to test whether the Government is obligated by law to pay interest on these refunds.

The Court of International Trade held that appellee may recover interest on refunds of HMT payments resulting from the Supreme Court's decision.[2] The trial court adjudged that 28 U.S.C. § 2411, which provides for post-judgment interest on tax refunds, applies.[3] We conclude that neither § 2411 nor any other statutory provision provides the necessary authorization for an award of interest to appellee on its HMT refunds. The judgment of the trial court is reversed.

## BACKGROUND

The HMT, enacted by Congress as part of the Water Resources Development Act of 1986, 26 U.S.C. § 4461–62 (1994), is an ad valorem tax imposed on shipments of commercial cargo which pass through the country's ports. Several thousand exporters challenged the constitutionality of the HMT as applied to exporters. In a test case, a three-judge panel of the Court of International Trade held that the HMT violates the Export Clause of the United States Constitution. *See United States Shoe Corp. v. United States*, 907 F.Supp. 408 (1995). This decision was affirmed by a five-judge panel of this court, *see United States Shoe Corp. v. United States*, 114

1. *United States v. United States Shoe Corp.*, 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998).

2. *IBM v. United States*, No. 94–10–00625, 1998 WL 325156 (Ct. Int'l Trade June 17, 1998).

3. All references to the United States Code are to the 1994 edition unless otherwise indicated.

F.3d 1564 (Fed.Cir.1997), which decision was affirmed by the Supreme Court, *see United States v. United States Shoe Corp.,* 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998).

In the course of the initial litigation before the Court of International Trade, that court issued an Order declaring that the plaintiff was entitled to a refund "together with interest and costs as provided by law." *United States Shoe Corp. v. United States,* 924 F.Supp. 1191, 1191 (Ct. Int'l Trade 1995). Subsequently the court determined that the question of interest on the refund judgment "is not a matter without controversy and it cannot be resolved as a simple clerical matter." *U.S. Shoe,* 20 Ct. Int'l Trade 206, 207 (1996). The Court of International Trade called for briefing on the issue of whether the exporters may recover interest. However, before the court issued its decision on the question of plaintiff's entitlement to interest, the Government filed a notice of appeal from the court's earlier decision on the constitutional issue. Thus, the interest issue was not addressed during the appellate proceedings that followed.

While the appeal of the constitutional issue was proceeding, the Court of International Trade decided the question of whether the exporters were entitled to interest on their refunds. The court acknowledged that the United States is immune from paying interest absent express congressional consent, citing *Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). *See U.S. Shoe,* 20 Ct. Int'l Trade at 207. The court found the necessary express authorization with regard to HMT refunds in 28 U.S.C. § 2411, which provides that "[i]n any judgment of any court rendered ( ... against the United States ... ) for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the overpayment rate established under [26 U.S.C. § 6621] upon the amount of the overpayment...." *U.S. Shoe,* 20 Ct. Int'l Trade at 207–08.

After the Supreme Court affirmed the unconstitutionality of the HMT as applied to exports, the Court of International Trade designated this case as a companion test case to *U.S. Shoe* to give the Government the opportunity to appeal the award of interest. *See IBM,* 1998 WL 325156, at *1. The Court of International Trade deemed filed in this case the briefs concerning the issue of interest filed in the *U.S. Shoe* proceedings as well as its 1996 *U.S. Shoe* opinion awarding interest. *See id.* This appeal followed.

## DISCUSSION

The issue of whether Congress has expressly authorized interest on HMT refunds is one of statutory interpretation, a question of law that we review independently and without deference to the trial court. *See Medline Indus., Inc. v. United States,* 62 F.3d 1407, 1409 (Fed.Cir.1995) (questions of law subject to full and independent review). The oft-repeated general principle is that the United States is immune to claims for interest unless Congress has waived immunity by expressly consenting to an award of interest. *See Shaw,* 478 U.S. at 314, 106 S.Ct. 2957. Congressional consent must be unambiguous. *See id.* at 318, 106 S.Ct. 2957.

The HMT statutory provisions are relatively brief, and are codified in two sections, numbered 4461 and 4462, as "Subchapter A—Harbor Maintenance Tax" in Chapter 36–Certain Other Excise Taxes, as part of Title 26–Internal Revenue Code. Section 4461 imposes the tax, and section 4462 provides definitions and special rules. Nothing in Subchapter A expressly addresses the question of whether in a refund of taxes paid thereunder, the payor is entitled to interest on the refund. The only provisions of Subchapter A that bear on the question are found in two paragraphs in subsection 4462(f), entitled "Extension of provisions of law applicable to customs duty."

Paragraph (1) of subsection (f) states: "Except to the extent otherwise provided

in regulations, all administrative and enforcement provisions of customs laws and regulations shall apply in respect of the tax imposed by this subchapter...." Paragraph (3) states: "The tax imposed by this subchapter shall not be treated as a tax for purposes of subtitle F or any other provision of law relating to the administration and enforcement of internal revenue taxes." (Subtitle F of Title 26 deals with the procedure and administration of the internal revenue system.)

■ It appears abundantly clear from these provisions that, even though the HMT is codified as an excise tax and is part of the Internal Revenue Code ("IRC"), Congress intended the administration and enforcement of the tax to be treated as if the tax was a customs duty, and not a tax under the IRC.

Because the statutory provisions which established the HMT do not explicitly authorize interest payments on refunds of the tax, if Congress authorized such payments the authorizing statute must be found elsewhere. And if such a statute is found, we must determine whether Congress by the provisions of subsection (f) quoted above has precluded its application to an HMT refund. We have been urged to look at several possible sources for the authorization; we shall examine each in turn.

## 1.

■ Subtitle F of Title 26, the Internal Revenue Code, in § 6611(a), states that "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621." This provision of the Code cannot apply because the HMT statute, § 4462(f)(3), specifically exempts the HMT from all provisions in subtitle F of Title 26: "[t]he [HMT tax] shall not be treated as a tax for purposes of subtitle F or any other provision of law relating to the administration and enforcement of internal revenue taxes." Thus, any Congressional authorization of interest payments on HMT refunds must be found outside of subtitle F.

The Court of International Trade found the necessary express authorization for interest payments in another Title of the United States Code, namely Title 28, which is entitled "Judiciary and Judicial Procedure." 28 U.S.C. § 2411 provides, in relevant part, that "[i]n any judgment of any court rendered ( ... against the United States ... ) for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the overpayment rate established under [26 U.S.C. § 6621] upon the amount of the overpayment...."

In its analysis of § 2411, the Court of International Trade first determined that the HMT is an internal revenue tax within the meaning of § 2411. *See U.S. Shoe*, 20 Ct. Int'l Trade at 208. The court then considered whether the two paragraphs of the HMT statute quoted above precluded application of § 2411 to HMT refunds. The court concluded that the HMT refund process would not constitute either "administration" or "enforcement" of the HMT, and that the HMT statute did not exempt HMT refunds from application of § 2411. *See U.S. Shoe*, 20 Ct. Int'l Trade at 208–09.

■ For purposes of analysis, we accept the argument of appellee and the holding of the Court of International Trade that payment of the HMT by exporters is an "internal revenue tax" within the meaning of § 2411. Because Congress codified the HMT as part of Title 26 of the United States Code, entitled "Internal Revenue Code," we may reasonably conclude that Congress considered the HMT to be an internal revenue tax. Furthermore, while it may be true that the constitutionality of the HMT was challenged because the HMT taxed goods exported out of the United States, the HMT is clearly derived from internal sources—the U.S. exporter—rather than external sources—the foreign recipient; HMT revenues were collected in the United States from domestic companies based on their use of ports and

harbors in this country. Thus both the structure and the content of the HMT point toward it being an internal revenue tax, and thus entitled on refund to the interest award provided under § 2411.

Furthermore, we accept appellee's contention that the language of § 2411 is broad enough, and has been so construed, as to cover the case before us. The question, then, is whether the express provisions of the HMT statute preclude application of § 2411 to refunds of the tax. As previously noted, the HMT statute in subsection (f) of § 4462 directs that "the [HMT] shall not be treated as a tax for purposes of subtitle F *or any other provision of law relating to the administration and enforcement of internal revenue taxes.*" 26 U.S.C. § 4462(f)(3) (emphasis added). If the refund process for the unconstitutionally-levied HMT is not related to the "administration and enforcement" of an internal revenue tax, then § 2411 of Title 28 would appear to be ample authorization for interest to be paid on the refund. If, however, the refund process for this internal revenue tax relates to its administration and enforcement, the plain language of the HMT statute would bar the use of § 2411 as a statutory basis for an award of interest on HMT refunds.

■ This is a question of statutory interpretation. We begin with the language of the statute itself. If that language is clear and unambiguous, then it controls, and we need not—indeed we may not—go further. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" (quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989))); *Muwwakkil v. Office of Personnel Management,* 18 F.3d 921, 924 (Fed. Cir.1994) ("When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails."). To determine whether the statutory language is plain and unambiguous, we look at "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson,* 519 U.S. at 341, 117 S.Ct. 843.

■ Because the HMT statute does not define "administration and enforcement," we assume that the terms have their ordinary meaning, for which we may consult a dictionary. *See Best Power Tech. Sales Corp. v. Austin,* 984 F.2d 1172, 1177 (Fed. Cir.1993) ("It is a basic principle of statutory interpretation ... that undefined terms in a statute are deemed to have their ordinarily understood meaning. For that meaning, we look to the dictionary.") (citations omitted). Black's Law Dictionary defines "administer" as "[t]o manage or conduct." Black's Law Dictionary 44 (6th ed.1990). "Enforce" is defined as "[t]o put into execution; to cause to take effect; to make effective; as, to enforce a particular law, a writ, a judgment, or the collection of a debt or fine; to compel obedience to." *Id.* at 528.

Applying these definitions to the HMT statute, we read "administration and enforcement of internal revenue taxes" broadly to encompass not only management of the tax system, including the assessment and collection of tax payments and issuance of refunds and interest on those refunds by the agency responsible, but also enforcement of the tax laws, including the obtaining and enforcement of judgments against both taxpayers and the United States. Nothing in the language of the statute limits "administration and enforcement" to the narrow interpretation applied by the Court of International Trade, i.e., "matters of routine administration and enforcement by an agency." *U.S. Shoe,* 20 Ct. Int'l Trade at 208.

Examination of the phrase "administration and enforcement" in the context of 26 U.S.C. § 4462(f)(3) supports this broader interpretation. Again, that paragraph of

the statute exempts the HMT from "subtitle F or any other provision of law relating to the administration and enforcement of internal revenue taxes." Subtitle F of the Internal Revenue Code is entitled "Procedure and Administration." In addition to chapters addressing agency responsibilities such as "Assessment" (chapter 63), "Collection" (chapter 64), and "Abatements, credits, and refunds" (chapter 65), subtitle F includes a chapter on "Judicial proceedings" (chapter 76). That chapter includes provisions regarding civil actions by the United States (subchapter A), proceedings by taxpayers and third parties (subchapter B), the Tax Court (subchapter C), and court review of Tax Court decisions (subchapter D).

A fair reading of the phrase "subtitle F or any other provision of law" as used by Congress in the HMT statute would thus include both the administrative and judicial processes as activities that relate to the "administration and enforcement" of taxes. Furthermore, interest on a tax refund would seem to be expressly included in those activities, since subtitle F itself contains a provision for interest on tax refunds, 26 U.S.C. § 6611(a). Accordingly, we are forced to conclude that Congress intended the phrase "administration and enforcement" to encompass not only agency action, but also judicial enforcement of the tax laws, including a judicial award of interest on tax refunds.

This interpretation is consistent with the other paragraph of subsection (f) of the HMT statute, § 4462(f)(1), quoted above, which provides that "all administrative and enforcement provisions of customs laws and regulations shall apply in respect of the [HMT] as if such tax were a customs duty." The Tariff Act of 1930, codified in the United States Code in Chapter 4 of Title 19, entitled "Customs Duties," provides for the administration and enforcement of customs duties in Subtitle III, entitled "Administrative Provisions." As discussed below, that subtitle includes a provision for interest on refunds of customs duties. *See* 19 U.S.C. § 1505.

Section 4462(f)(3) is complementary to § 4462(f)(1), i.e., the administration and enforcement provisions relating to tax laws cannot apply to the HMT, *see* § 4462(f)(3), because the administration and enforcement provisions of the customs laws do apply to the HMT, *see* § 4462(f)(1). Accordingly, because an interest provision such as 19 U.S.C. § 1505(c) is an administrative and enforcement provision of the customs laws, the section of Title 28, § 2411, which provides for interest on tax refunds, is a "provision of law relating to the administration and enforcement of internal revenue taxes" within the meaning of 26 U.S.C. § 4462(f)(3) and cannot apply to the HMT.

Although it is unnecessary to consider the legislative history because the statutory language is clear from the language itself and its context, we note that the legislative history does not contradict the plain meaning of the HMT statute. The Senate Finance Committee report, cited by the Court of International Trade, states that it is more appropriate for the Customs Service, rather than the Internal Revenue Service, to collect and administer the HMT because the Customs Service has a strong presence at ports of entry and experience at appraising merchandise. *See* S.Rep. No. 99–228, *reprinted in* 1986 U.S.C.C.A.N. 6705, 6714. In order to facilitate the administration of the HMT by Customs, the report explains, the statute provides that all administrative and enforcement provisions of the customs law and regulations apply to the HMT as if it were a customs duty. *See id.* at 6714–15.

Though nothing in the legislative history defines the phrase "administration and enforcement," and the report is silent on the issue of whether a provision for interest on refunds relates to administration and enforcement, the legislative history confirms that § 4462(f)(3) was enacted as a counterpart to § 4462(f)(1) so that the administrative and enforcement provisions of only the customs statutes, and not the tax laws, would apply to the HMT. *See id.* at 6715.

As noted above, the administrative provisions of the customs laws include interest provisions. Because Congress did not specifically exclude interest provisions from "administrative and enforcement provisions" with respect to § 4462(f)(1), we must conclude that the interest provisions of the customs laws, and not the tax laws, apply to the HMT.

### 2.

■ Having concluded that the HMT is to be treated as a customs duty for administrative and enforcement purposes, we look to the customs statutes for an express authorization of interest. Two provisions, 28 U.S.C. § 2644 and 19 U.S.C. § 1505(c), were raised before the Court of International Trade and by amici on appeal. We agree with the Court of International Trade that these customs provisions do not provide for interest on HMT refunds on the facts of this case. *See U.S. Shoe*, 20 Ct. Int'l Trade at 208–09.

28 U.S.C. § 2644 permits a judicial award of interest upon a judgment in a civil action brought pursuant to 19 U.S.C. § 1515 to contest the denial of an administrative protest. Appellee, however, did not pursue a refund of HMT payments through a customs protest. Indeed, in the earlier test case, the Court of International Trade had jurisdiction over the constitutional challenge to the HMT under 28 U.S.C. § 1581(i), the residual jurisdiction provision, and not under 28 U.S.C. § 1581(a), the provision that gives the Court of International Trade jurisdiction over actions filed under 19 U.S.C. § 1515. *See U.S. Shoe*, 523 U.S. at 366, 118 S.Ct. 1290. Because appellee did not file an administrative protest and did not contest the denial of such a protest, appellee is not entitled to interest under 28 U.S.C. § 2644.

■ The customs laws also provide for pre-judgment interest on certain excess duties paid to Customs. Specifically, "[i]nterest on excess moneys deposited shall accrue ... from the date the *importer of record* deposits estimated duties, fees

and interest ... to the date of *liquidation or reliquidation* of the applicable *entry* or reconciliation." 19 U.S.C. § 1505(c) (emphasis added); *see also* 19 U.S.C. § 1520(d) (1988) (repealed 1993) (authorizing interest "if a determination is made to reliquidate an entry"). On its face, the statute contemplates an entirely different factual scenario from the one before us. However, amici suggest that by substituting the exporter for the "importer of record," the HMT quarterly report for the "entry," and Customs' acceptance of the HMT payment for "liquidation," we can apply § 1505(c) to provide interest on HMT refunds. We are without power to rewrite a Congressional enactment to make it fit a case for which it was clearly not intended, no matter how compelling the case, particularly in light of the Supreme Court's mandate that Congress must expressly consent to an award of interest. *See Shaw*, 478 U.S. at 314, 106 S.Ct. 2957. Accordingly, § 1505(c) does not authorize interest on HMT refunds.

In sum, we are bound by the rule that the United States is liable for interest only if Congress has waived sovereign immunity by expressly consenting to an award of interest. Section 4462(f) provides that the HMT is to be treated as a customs duty, and not as a tax, for purposes of statutory provisions relating to administration and enforcement. Because § 2411, the provision on which appellee and the trial court relied, is a provision of law relating to the administration and enforcement of taxes, the HMT statute precludes the application of § 2411 to provide interest on refunds of the HMT. Furthermore, the statutory provisions of the customs laws dealing with interest on refunds do not entitle this appellee, on these facts, to interest on HMT refunds.

Congress has waived sovereign immunity in both the tax code and the customs laws to permit interest to be paid on certain refunds to allow for the time value of money when the Government has had the use for a period of time of money to which

it is not lawfully entitled. Congress has considered this to be only fair and proper. In the case before us, appellee makes a case for equal treatment. After thorough consideration, however, we are unable to find in the existing statutory framework, nor has any been cited to us, the necessary Congressional purpose to provide for interest on these particular refunds under the HMT. If relief for these taxpayers is to be granted, Congress must grant it.

## CONCLUSION

The judgment of the Court of International Trade must be, and is,

*REVERSED.*

## COSTS

Each party shall bear its own costs.