**BMW MANUFACTURING CORPORATION, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 00–1135.

United States Court of Appeals, Federal Circuit.

March 5, 2001.

Sidney H. Kuflik, Lamb and Lerch, of New York, NY, argued for plaintiff-appellant. With him on the brief was David R. Ostheimer.

Jeffrey A. Belkin, Trial Attorney, Commercial Litigation Branch, Civil Division,

Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; and Todd M. Hughes, Assistant Director. Of counsel on the brief was Richard McManus, Attorney, Office of General Counsel, United States Customs Service, of Washington, DC.

Before MICHEL, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

BMW Manufacturing Corporation appeals from the decision of the United States Court of International Trade upholding the United States Customs Service's ("Customs' ") imposition of the Harbor Maintenance Tax ("the HMT") on merchandise admitted into a foreign trade zone ("FTZ") pursuant to 19 C.F.R. § 24.24(e)(2)(iii) (2000). *BMW Mfg. Corp. v. United States*, 69 F.Supp.2d 1355 (Ct. Int'l Trade 1999) ("*BMW I*"). Because we conclude that the Court of International Trade did not err in upholding Customs' regulation, we affirm.

## BACKGROUND

■ BMW is a United States company incorporated in the state of Delaware, and is a wholly-owned subsidiary of Bayerische Motoren Werke Aktiengesellschaft of Munich, Germany. *Id.* at 2–3. BMW has a facility in Spartanburg, South Carolina, at which it both manufactures motor vehicles and receives motor vehicles that were manufactured overseas. *Id.* at 3. BMW utilizes both U.S. and foreign components in the vehicles it manufactures at Spartanburg. *Id.* BMW's Spartanburg facility is a foreign trade subzone.[1] *Id.* The foreign goods imported into that facility, whether complete motor vehicles or automotive components, are therefore entitled to receive beneficial FTZ treatment. *See generally* 19 U.S.C. §§ 81a–81u; 19 C.F.R. pt. 146. One such benefit afforded merchandise admitted into an FTZ is the exemption it receives from the customs laws of the United States. 19 U.S.C.A. § 81c(a) (West Supp.2000).

■ The HMT, contained in title XIV of the Water Resources Development Act of 1986, Pub.L. No. 99–662, 100 Stat. 4082 (1986), is an *ad valorem* tax on commercial cargo involved in "any port use," including imports. I.R.C. § 4461. Customs regulations mandate the imposition and collection of the HMT upon the admission of foreign merchandise into an FTZ. 19 C.F.R. § 24.24(e)(2)(iii).[2] The HMT is to be paid on a quarterly basis by the applicant for admission into the FTZ with a completed Customs Form 349 ("CF 349"). *Id.* As the party admitting foreign goods into an FTZ, BMW has filed CF 349s with HMT payments in accordance with 19 C.F.R. § 24.24(e)(2)(iii). *BMW I* at 4.

BMW commenced a civil action at the United States Court of International Trade challenging the imposition and collection of the HMT on the merchandise it had imported into its Spartanburg facility, initially asserting four causes of action. *Id.* Of those four causes of action, BMW ultimately pursued only its claim that the HMT, whether treated as a customs duty or an excise tax, may not be imposed and collected upon foreign goods that are admitted into an FTZ. *Id.* Both BMW and

---

1. An FTZ is a discrete area located at or adjacent to a port of entry that is authorized by Congress to receive preferential treatment under the customs laws of the United States. *See generally* 19 U.S.C. §§ 81a–81u (1994); 19 C.F.R. pt. 146 (2000). An FTZ may either be a general purpose foreign trade zone or a foreign trade subzone. *BMW I* at 3 n. 3. The distinction between the two is meaningless for purposes of this litigation; the Spartanburg facility will therefore simply be referred to as an FTZ.

2. 19 C.F.R. § 24.24(e)(2)(iii) provides in relevant part that "[i]n cases where imported cargo is unloaded from a commercial vessel at a port within the definition of this section and admitted into a foreign trade zone, the applicant for admission (the person or corporation responsible for bringing [the] merchandise into the zone) ... shall pay all fees for which he is liable on a quarterly basis in accordance with paragraph (f) of this section...."

the government moved for summary judgment. *Id.* at 1.

The Court of International Trade granted summary judgment in favor of the government and held that 19 C.F.R. § 24.24(e)(2)(iii) properly imposes HMT liability on cargo admitted into an FTZ. *Id.* at 10. The court noted that merchandise admitted into an FTZ is not included among the list of port uses specifically exempted from the HMT under I.R.C. § 4462. *Id.* at 6. The court also found that because the HMT is treated as a customs duty for administration and enforcement purposes only, neither I.R.C. § 4462(f)(1) nor 19 U.S.C. § 1528 (1994) rendered applicable the customs duty exemption in 19 U.S.C. § 81c(a) for cargo admitted into an FTZ. *Id.* at 7. Finally, after the parties informed the court that BMW paid the international shipping charges for the merchandise at issue, the Court of International Trade, in a separate opinion, concluded that the HMT was properly assessed against BMW because it qualified as either an "importer" or a "shipper" under I.R.C. § 4461(c). *BMW Mfg. Corp. v. United States*, No. 97–03–00396, 1999 WL 794871 (Ct. Int'l Trade Sept. 30, 1999).

BMW timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (1994).

## DISCUSSION

This court reviews a grant of summary judgment by the Court of International Trade "for correctness as a matter of law, deciding de novo the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *Texaco Marine Servs., Inc. v. United States*, 44 F.3d 1539, 1543 (Fed.Cir.1994) (quoting *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 767 (Fed.Cir.1993)). When Congress has not directly addressed the precise question of statutory interpretation at issue, we give deference to Customs' regulations interpreting portions of a statute that are silent or ambiguous as to that issue. *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392, 119 S.Ct. 1392, 143

L.Ed.2d 480 (1999) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

BMW argues that the imported merchandise at issue qualifies for the customs duty exemption provided by 19 U.S.C. § 81c(a) for goods admitted into an FTZ, and that it is therefore precluded from being assessed with HMT liability. Specifically, BMW contends that this court in *IBM Corp. v. United States*, 201 F.3d 1367 (Fed.Cir.2000), construed the "administration and enforcement" language of I.R.C. § 4462(f)(1) to include customs laws that deal with the assessment of HMT liability, and therefore that the exemption in § 81c(a) applies. BMW further argues that 19 U.S.C. § 1528, which states that a tax shall be construed to be a customs duty if the enabling statute contains a provision to the effect that it be so treated, triggers § 81c(a) and thus precludes the application of the HMT against the merchandise at issue. Alternatively, BMW argues that even if the HMT is not treated as a customs duty, it is codified as an excise tax. Therefore, BMW asserts, it cannot be assessed with HMT liability because goods admitted into an FTZ are exempt from excise taxes under § 81c(a). Finally, BMW argues that even if the HMT may be properly imposed on merchandise admitted into an FTZ, it is neither an "importer" nor a "shipper" under Customs' own definitions of these terms and thus that it was improperly charged with HMT liability.

The government responds that Congress created express exemptions from the HMT for certain port uses under I.R.C. § 4462, and therefore that it would have expressly exempted goods admitted into FTZs from the HMT if it had intended to do so. The government argues that the HMT is simply a general charge for the use of certain harbors, which is imposed at the time of cargo unloading without regard to whether the goods are admitted into an FTZ or the customs territory of the United States.

The government also contends that the exemption provided by § 81c(a) does not apply to the HMT because I.R.C. § 4462 directs Customs to treat the HMT as a customs duty for collection purposes only, and because § 1528 requires that a tax be expressly designated as a customs duty to be afforded the preferences of the customs laws. Finally, the government argues that Customs' determination that HMT liability should be assessed upon the applicant for admission to an FTZ should be upheld as a reasonable interpretation of the HMT statute.

We agree with the government that merchandise admitted into an FTZ is not exempt from the HMT and that Customs properly applied 19 C.F.R. § 24.24(e)(2)(iii) to the cargo at issue. We note at the outset that Congress has provided express exemptions from the HMT for certain port uses. Congress created a "[s]pecial rule for Alaska, Hawaii, and [United States] possessions" that exempts certain cargo from the HMT in I.R.C. § 4462(b). Congress also expressly exempted "bonded commercial cargo entering the United States for transportation and direct importation to a foreign country" from the HMT in I.R.C. § 4462(d)(1). It thus appears that Congress expressly provided for the exemption of certain merchandise from the HMT. Where it did not so provide, it is reasonable to conclude that it did not so intend. *Expressio unius est exclusio alterius.* The absence of any provision specifically exempting goods admitted into an FTZ therefore leads to the conclusion that Congress did not intend such an exemption.

Because the HMT statute itself does not exempt goods admitted into an FTZ, we next turn to BMW's assertion that the HMT should be treated as a customs duty, thereby precluding the application of the HMT to goods admitted into an FTZ under § 81c(a). Section 81c(a) reads as follows:

> Foreign and domestic merchandise of every description, except such as is prohibited by law, may, without being subject to the customs laws of the United States, except as otherwise provided in this chapter, be brought into [an FTZ] and may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be exported, destroyed, or sent into [the] customs territory of the United States therefrom, in the original package or otherwise; but when foreign merchandise is so sent from [an FTZ] into [the] customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise....

19 U.S.C.A. § 81c(a). BMW's first argument, that § 81c(a) applies based on the language of I.R.C. § 4462, is without merit. Section 4462(f)(1) states that "[e]xcept to the extent otherwise provided in regulations, all *administrative and enforcement* provisions of customs laws and regulations shall apply in respect of the tax imposed by this subchapter (and in respect of persons liable therefore) as if such tax were a customs duty." I.R.C. § 4462(f)(1) (emphasis added). As aptly stated by the Court of International Trade, just because the "administrative and enforcement provisions" of the customs laws apply to the HMT does not mean that all provisions of the customs law apply. Had Congress intended to apply substantive provisions of the customs laws that affect HMT liability, such as the customs duty exemption in § 81c(a), it would not have limited the applicable provisions to those that implicate only the "administrati[on] and enforcement" of the HMT.

We agree with the government that our decision in *IBM* does not require a different result. The issue in *IBM* was whether the similar "administration and enforcement" language of I.R.C. § 4462(f)(3) encompassed judicial enforcement for purposes of awarding interest on HMT refunds. *IBM*, 201 F.3d at 1369. We held in *IBM* that such judicial enforcement

was covered under the language of the statute, and thus denied the claimant interest on its HMT refund because that relief was only available under the tax laws. *Id.* at 1372. Nowhere in the opinion did we address whether the "administration and enforcement" language of § 4462(f)(3) could be construed to render substantive provisions of the customs laws applicable to the HMT. We simply held that judicial enforcement was enforcement within the language of the statute. We therefore reject BMW's inapt reliance on *IBM.*

■■■ Moreover, BMW's argument that the exemption for goods admitted into an FTZ should apply to the HMT is contradicted by the plain language of the HMT statute. The HMT statute makes clear that the tax is due immediately upon cargo unloading, without regard to the destination of the merchandise. I.R.C. § 4461(c)(2) (stating that "the [HMT] shall be imposed ... at the time of unloading"). Under BMW's construction of the statute, the destination of the cargo would be crucial, as the HMT would not be due until the merchandise was formally admitted into the customs territory of the United States. *See* 19 U.S.C. § 81c(a) (exempting imported merchandise from the customs laws until formal entry into customs territory). Had Congress intended to impress such a condition on the imposition of the HMT, it seems illogical that it would have imposed the tax "at the time of unloading." Furthermore, we have previously stated that "[t]he HMT is a *generalized Federal charge for the use of certain harbors* ... intended to be assessed independently of whether the 'port use' is for imports, exports, or other shipments...." *Texport Oil Co. v. United States,* 185 F.3d 1291, 1297 (Fed.Cir.1999) (citations omitted) (emphasis added). Congress therefore could not have intended that there be an HMT exemption for goods admitted into an FTZ without explicitly providing for one, as it did in the case of "bonded commercial cargo," I.R.C. § 4462(d)(1), because it is a general tax on port use that is not conditioned on formal entry into the customs territory of the United States.

■■■ BMW's second argument, that § 1528 triggers the application of § 81c(a), is equally without merit. Section 1528 states:

No tax or other charge imposed by or pursuant to any law of the United States shall be construed to be a customs duty for the purposes of any statute relating to the customs revenue, unless the law imposing such tax or charge designates it as a customs duty or contains a provision to the effect that it shall be treated as a duty imposed under the customs laws.

19 U.S.C. § 1528. The HMT is not a customs duty. Nowhere in the HMT statute has Congress expressly designated the HMT as a customs duty. Furthermore, the HMT is not treated as a customs duty, as only the "administrative and enforcement" provisions of the customs laws are said to apply to the tax. I.R.C. § 4462. Delegating to Customs the responsibility of collecting and enforcing the HMT is not the same as treating the HMT itself as a customs duty. Moreover, in addressing the predecessor statute to § 1528, the Court of Customs and Patent Appeals[3] in *Westco* stated that "the purpose Congress had in mind ... was to make clear that preferences and exemptions applicable to customs duties were to have no applicability to internal revenue taxes unless Congress expressly said so." *United States v. Westco Liquor Prods. Co.,* 38 C.C.P.A. 101, 107, 1951 WL 5350 (1951). Because Congress has not expressly stated that the preferences and exemptions available under the customs laws apply to the HMT, § 81c(a) therefore cannot enable BMW to avoid HMT liability for the importation of the merchandise at issue.

■■■ BMW alternatively argues that if the HMT is not found to be a customs duty, it is codified as an excise tax, and

---

**3.** Decisions of the Court of Customs and Patent Appeals are binding precedent on this court. *South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.Cir.1982) (en banc).

therefore that BMW's imported merchandise is exempted from HMT liability because § 81c(a) encompasses excise taxes. However, as discussed above, the HMT is a "generalized Federal charge for the use of certain harbors." *Texport Oil*, 185 F.3d at 1297 (Fed.Cir.1999). Although the HMT is organized under subtitle D of title 26, entitled "Miscellaneous Excise Taxes," it is assessed on cargo without regard to whether that cargo formally enters the customs territory of the United States. *See* I.R.C. § 4461(2)(B) (stating that "the [HMT] ... shall be imposed ... at the time of unloading"). Conversely, the legislative history of § 81c(a) demonstrates that the exemption therein is targeted at duties and taxes that attach upon formal entry into the United States customs territory. *See* S.Rep. No. 81–1107, at 3–4 (1949), *reprinted in* 1950 U.S.C.C.A.N. 2533, 2535–36 ("Duties and taxes would be payable ... only *if and when the merchandise was sent into customs territory*.") (emphasis added). Even if the HMT is properly considered an excise tax, § 81c(a) therefore does not exempt cargo admitted into an FTZ from liability under that tax provision.

■ Finally, BMW asserts that even if the HMT is properly assessed on goods admitted into an FTZ, it is neither an "importer" nor a "shipper" under the HMT statute and thus that it was improperly charged with HMT liability. We disagree. The HMT statute imposes liability as follows:

(1) Liability.—The tax imposed by subsection (a) shall be paid by—

(A) in the case of cargo entering the United States, the *importer*;

. . .

(C) in any other case, the *shipper*.

I.R.C. § 4461(c)(1) (emphasis added). BMW argues that because cargo admitted into an FTZ has not officially entered the customs territory of the United States, and because FTZs are not included in the definition of "United States" under the HMT statute, it cannot be considered an "importer." BMW further argues that although Customs defined a "shipper" to be "the person or corporation who pays the freight" for domestic shipment purposes, 19 C.F.R. § 24.24(e)(1)(i), it defined "shipper" in the context of foreign merchandise transactions as "[o]ne who transports goods for a charge; a common carrier," Customs Headquarter Ruling # 226514 (March 6, 1996) (citing Black's Law Dictionary 1235 (5th ed.1979)). BMW therefore argues that it cannot be considered a "shipper" because it neither transports its goods for a charge nor acts as a common carrier.

■ Although BMW points to alternative definitions of "importer" and "shipper" under which it might avoid liability for the HMT, it has not demonstrated any reason why placing liability on the applicant for admission into an FTZ is an unreasonable interpretation of § 4461(c)(1). Neither "importer" nor "shipper" is expressly defined in the HMT statute. Furthermore, the legislative history of that statute does not help us to decipher the meaning of "importer" or "shipper." When Congress has not "directly spoken to the precise question [of statutory construction] at issue," *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778, we defer to an agency regulation interpreting that statute, *Haggar*, 526 U.S. at 392, 119 S.Ct. 1392. Because Customs has reasonably determined that the applicant for admission into an FTZ is the "importer" or "shipper" under § 4461(c), we conclude that BMW was properly charged with HMT liability for the importation of the merchandise at issue.

We have considered BMW's remaining arguments and have determined that they are without merit.

## CONCLUSION

Because the Court of International Trade did not err in upholding Customs' regulation, we *AFFIRM*.