Slip Op. 04-136

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| NIPPON EXPRESS USA, INC., | : | |
| Plaintiff, | : | |
| v. | : | |
| UNITED STATES OF AMERICA, | : | Court No. 97–12–02187 |
| Defendant. | : | |

[Plaintiff's motion for judgment on the pleadings granted.]

Dated:  November 4, 2004

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (Steven P. Florsheim and Robert F. Seely) for plaintiff.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Todd M. Hughes, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (David S. Silverbrand), Richard McManus, Senior Attorney, Office of the Chief Counsel, Civil Division, Customs & Border Protection, Department of Homeland Security, of counsel, for defendant.

## OPINION

**RESTANI, Chief Judge:**

The United States, as part of a reciprocal arrangement with other countries, provides privileged treatment to imports of "[a]rticles for the official use of members of the armed forces of any foreign country on duty in the United States."  Harmonized Tariff Schedule of the United States ("HTSUS"), 9809.00.30.  These articles are exempt from "payment of duty," as well as "payment of any internal–revenue tax imposed upon . . . importation."  HTSUS, Ch. 98, U.S. Note 3 (referred to hereinafter as "U.S. Note 3" or the "foreign military articles exemption").

Plaintiff Nippon Express USA, Inc. properly entered certain articles of military equipment under this exemption, but was required to pay Harbor Maintenance Tax ("HMT"), a tax on port use equal to 0.125 percent of the value of the imported articles. 26 U.S.C. § 4461 (2000). The parties' cross-motions for judgment on the pleadings ask the court to determine whether the HMT is an "internal revenue tax" for purposes of the HTSUS foreign military articles exemption.

The U.S. Note 3 exemption cannot fulfill its role in the reciprocal military relationship between the United States and other countries if the court adopts an unusual and restrictive view of the applicable privilege. Reciprocity between different domestic legal systems depends to a significant extent on a willingness to construe key terms in a manner that will not create the impression that one party is attempting to frustrate the privileges enjoyed by the other party. Because the foreign military articles exemption should be broadly construed to encompass a measure like the HMT—which in commonly understood terms is a tax—HMT was improperly imposed on Nipon Express's imports. Accordingly, the Government's cross–motion for judgment on the pleadings is denied, and Nippon Express's cross–motion is granted.

## BACKGROUND

The facts are not in dispute and merit only brief discussion. In 1996, 1997, and 1998, Nippon Express filed five customs entries covering ground support equipment and dummy missiles for training of personnel of the Japanese Ground Self-Defense Forces ("JDF") in the United States. One of those entries, entry number 510-7221682-6 is at issue in this case. The entry was liquidated as claimed duty free under subheading 9809.00.30, HTSUS, and HMT of $63,280.22 was collected on the entry. Nippon Express properly protested the imposition of HMT on the merchandise, and Customs denied this protest. The court has jurisdiction pursuant

to 28 U.S.C. § 1581(a).

## RELEVANT STATUTES AND REGULATIONS

**A.      Chapter 98, HTSUS, U.S. Note 3 (1996-1998)**

Any article exempted under subchapters IV through VII, inclusive, or subchapter IX from the payment of duty shall be exempt also from the payment of any internal–revenue tax imposed upon or by reason of importation.

**B.      Chapter 98, subchapter IX, HTSUS (1996-1998)**

| *Heading/Subheading* | *Article Description* |
|---|---|
| | Articles for foreign governments on a reciprocal basis and for public international organizations |
| | *** |
| 9809.00.30 | Articles for the official use of members of the armed forces of any foreign country on duty in the United States ..... |

**C.      19 C.F.R. § 148.90 (1996-1998)**

(a) *Exemptions allowed.*  Port directors shall in accordance with the provisions of this section admit the following free of duty and internal revenue tax imposed upon or by reason of importation:

                                        ***

            (3) Articles entered or withdrawn from warehouse for consumption for the official use of members of the armed forces of any foreign country on duty in the United States, under subheading 9809.00.30, HTSUS.

            (b) *Reciprocity limitation.*  When port directors have been advised officially of a finding by the Secretary of the Treasury that a foreign country does not reciprocate to members of the armed forces of the United States on duty in its country and members of their immediate families the privileges accorded its members and their families in the United States, the port director shall accord to the personnel of such foreign government privileges under the law only to the extent to which the foreign government accords similar treatment to members of the armed forces of the United States and members of their immediate families.

(c) *Status of importer questioned.* If any question arises as to the status of the importer under subheading ... 9809.00.30, HTSUS, or whether articles entered thereunder are for official use ..., the port director shall report the available facts to the Commissioner of Customs for instructions.

**D.      26 U.S.C. § 4461, Imposition of tax**

(a) *General Rule.*
There is hereby imposed a tax on any port use.

(b) *Amount of Tax.*
The amount of the tax imposed by subsection (a) on any port use shall be an amount equal to 0.125 percent of the value of the commercial cargo involved.

(c) *Liability and time of imposition of tax.*

(1) *Liability*
The tax imposed by subsection (a) shall be paid by –
(A)  in the case of cargo entering the United States, the importer,
(B)  in the case of cargo to be exported from the United States, the exporter, or
(C)  in any other case, the shipper.

(2)  *Time of imposition*
Except as provided by regulations, the tax imposed by subsection (a) shall be imposed –
(A)  in the case of cargo to be exported from the United States, at the time of loading, and
(B)  in any other case, at the time of unloading.

**E.      19 C.F.R. 24.24, Harbor Maintenance Fee**

(a) *Fee.*
Commercial cargo loaded on or unloaded from a commercial vessel is subject to a port use fee of 0.125 percent (.000125) of its value if the loading or unloading occurs at a port within the definition of this section, unless exempt under paragraph (c) of this section or one of the special rules in paragraph (d) of this section is applicable.[1]

---

[1]  The remainder of the regulation is not relevant and paragraphs (c) and (d) do not reference the situation at issue.

**DISCUSSION**

The court concurs with the parties that this case turns on an issue of law and may be decided on the basis of the pleadings pursuant to Rule 12(c) of this court. See CIT R. 12(c); see also Schulstad USA, Inc. v. United States, 240 F. Supp. 2d 1335, 1336-37 (Ct. Int'l Trade 2002). As with any issue of law, the matter is determined de novo. Deference to any agency statutory interpretation would be owed if the statutory language in issue were ambiguous. Even then, in the absence of a regulation or a formal adjudication, deference would be owed only so far as that interpretation has the power to persuade. See United States v. Mead, 533 U.S. 218, 235 (2001). In this case, the meaning of the statute is clear.[2]

The issue in this case is whether the HMT constitutes an "internal–revenue tax imposed upon . . . importation" within the meaning of HTSUS Chapter 98, U.S. Note 3. An "internal revenue tax" may not be imposed upon "[a]rticles for the official use of members of the armed forces of any foreign country on duty in the United States." HTSUS 9809.00.30. This favorable treatment for articles of foreign armed forces represents the domestic component of reciprocal arrangements that the United States enjoys with some countries. The exemption's text, context, and legislative history lead to the conclusion that, for purposes of U.S. Note 3, the HMT is (a) an "internal revenue tax," (b) "imposed upon importation."

---

[2] The federal agency involved in the case before the court is the Bureau of Customs and Border Protection. It is not clear, however, that Customs should provide the relevant interpretation. The government has not represented that the views of other potentially affected agencies, here particularly the Department of Defense, have been sought. Of course, it is the intent of Congress, not the view of any executive agency, which is key. Here, the intent of Congress is clear.

**A.      The HMT is a "tax" within the meaning of Chapter 98, HTSUS, U.S. Note 3.**

The HMT statute itself does not exempt imports of military equipment intended for use by foreign armed forces during training in the United States.  Where the HMT does not directly exempt a good, the good may still be exempt from HMT through the operation of another statute. Citgo Petroleum Corp. v. United States, 24 CIT 333, 335, 104 F. Supp. 2d 106, 108 (2000); see also BMW Mfg. Corp. v. United States, 241 F.3d 1357, 1361 (Fed. Cir. 2001).[3]  In this case, the other statute is U.S. Note 3, which exempts the articles imported by Nippon Express from customs duties as well as "internal revenue tax."[4]

**1.      "Internal Revenue Tax" Under Chapter 98, HTSUS, U.S. Note 3.**

Because U.S. Note 3 does not define "internal revenue tax," the term is deemed to have its ordinary meaning.  See Int'l Bus. Machs. v. United States, 201 F. 3d 1367, 1372 (Fed. Cir. 2000).  Black's Law Dictionary defines "internal revenue"as "[g]overnmental revenue derived from domestic taxes rather than from customs or import duties." Id. at 820 (7th ed. 1999). Considering internal revenue taxes and customs or import duties to be mutually exclusive categories of government revenue—one focused on domestic revenue sources and the other on foreign sources—the foreign military articles exemption is broad indeed, shielding covered

---

[3] In BMW Mfg., the Federal Circuit cited the general principle that to explicitly include some things within a statue is to exclude others. Id. at 1361.  Nevertheless, the court went on to evaluate whether another statutory provision, 19 U.S.C. § 81c(a), operated to exempt from the HMT goods admitted into a foreign trade zone. Id. (rejecting the argument that the HMT constituted a customs duty for purposes of 19 U.S.C. § 81c(a)).

[4] The U.S. Notes to the HTSUS are integral parts of the HTSUS and serve "to define the precise scope of each heading, subheading, chapter, subchapter, and section." Trans–Border Customs Services, Inc. v. United States, 18 CIT 22, 26, 843 F. Supp. 1482, 1486 (1994).

imports from both types of charges. See Int'l Bus. Machs., 201 F. 3d at 1371 (observing that a measure which derives its revenue from internal sources tends to be an internal revenue tax).

Congress, however, went further in giving the exemption a broad scope: U.S. Note 3 provides an exemption from payment of "any internal–revenue tax imposed upon or by reason of importation." HTSUS, Chapter 98, U.S. Note 3 (emphasis added).[5] Congress' reference to "any" internal revenue tax indicates a preference that "internal revenue tax" be construed broadly, not narrowly. This inclusive language does not denote an intention that the applicability of the exemption should turn on fine distinctions among revenue measures that are found in the internal revenue code and imposed in connection with the importation process. The language also undermines the proposition that Congress would extend considerable privileges to foreign military articles—preventing the imposition of customs duties or any internal revenue tax imposed upon importation—and yet subject them to a charge on their use of the harbor. Such a proposition seems even more improbable considering that the exemption is the mechanism through which the United States maintains reciprocal privileges with other countries.

The U.S. Note 3 exemption is premised on reciprocity; i.e., "[t]he mutual concession of advantages or privileges for purposes of commercial or diplomatic relations." Black's Law Dictionary 1276. The hallmark of a reciprocal relationship is that each party accords the same or similar treatment to the other. Accordingly, the foreign military articles exemption will be modified or withheld if the Secretary of the Treasury finds that a foreign country "does not reciprocate to members of the armed forces of the United States on duty in its country and

---

[5] The collection of HMT and issuance of refunds is governed by customs laws as if the HMT were a customs duty. Int'l Bus. Machs., 201 F. 3d 1367, 1372–73 (Fed. Cir. 2000) (interpreting "administration and enforcement" as used in 26 U.S.C. § 4462(f)(1)).

members of their immediate families the privileges accorded its members and their families in

the United States." 19 C.F.R. § 148.90(b)(3). A country that does not reciprocate will have its

U.S. import privileges reduced to a level "similar" to what the country provides to U.S. forces.

Id. The use of "similar" underscores the proposition that a reciprocal legal arrangement among

countries with different domestic laws cannot succeed if one country splits hairs; for instance,

denying a benefit on the grounds that an import–related charge is neither a customs duty nor an

internal revenue tax but is instead a non–exempt "user fee." It is easy to imagine that analogous

opportunities for hair–splitting might present themselves in other countries. Indeed, the other

side of the coin for the foreign military equipment exemption is that a foreign country may feel

compelled to withhold favorable treatment for entries of U.S. military equipment if that country

perceives that the United States has declined to reciprocate. A foreign country might easily

perceive a lack of reciprocity if the court were to strictly construe "internal–revenue tax imposed

upon . . . importation," where such a result is not clearly required by statute or case law.

      An extremely narrow construction of the exemption is also refuted by the relevant

legislative history,[6] which reflects a recognition that, by extending privileges toward the modest

number of foreign troops on duty in this country, the United States would obtain a considerable

benefit for the significant number of its armed forces operating abroad:

> The purpose of the first section of this bill is to extend to members of the armed forces of any foreign country on duty in the United States, its Territories or possessions (of whom there are now less than 600) exemption from duties and internal revenue taxes imposed upon or by reason of the importation or withdrawal from warehouse of articles, for the official use of a member of the armed forces fo a foreign country, or for the personal use of a member of the armed forces of a foreign country, or for the personal use of himself or any member of his immediate family.  The exemption is conditioned upon reciprocal treatment being accorded to members of the armed forces of the United States (of whom there are now approximately 7,100 serving in foreign countries other than occupied territory) and members of their families.

---

[6]  This legislative history pertains to a law enacted as section 1, chapter 517 of the Act of August 27, 1949, Pub. L. No. 81–271, 63 Stat. 666, 666–67 (1949) (originally codified at 19 U.S.C. § 196(a)).  Although this is an antecedent statute to U.S. Note. 3 and subheading 9809.00.30 of the HTSUS, its relevant provisions are nearly identical:

> articles entered, or withdrawn from warehouse, for consumption in the United States, its Territories, or possessions for the official use of persons who are on duty in the United States, its Territories, or possessions as members of the armed forces of any foreign country, or for the personal use of any such person or of any member of his immediate family, shall be admitted free of all duties and internal revenue taxes imposed upon or by reason of importation (including taxes imposed by sections 3350 and 3360 of the Internal Revenue Code) and of all customs charges and exactions

Id. (emphasis added).

Section 3350(a) of the Internal Revenue Code provided for the levy, collection, and payment in the United States on articles imported from the Virgin Islands of "a tax equal to the internal revenue tax imposed in the United States upon like articles of domestic manufacture," and 3350(b) made such articles exempt from the payment of "any tax imposed by the internal revenue of such islands."  26 U.S.C. § 3350 (codified as amended at 26 U.S.C. § 7652 (2002)).  Section 3360 contained similar provisions with respect to articles from Puerto Rico.  26 U.S.C. § 3360 (codified as amended in scattered sections of 26 U.S.C., including 26 U.S.C. § 7652 (2002)).

Personnel of the armed forces of the United States and members of their immediate families are in most, if not all, cases accorded exemptions by the foreign country in which they are stationed comparable to those provided in the bill, but the continuation of such privileges is jeopardized by the termination on June 30, 1948, of a wartime statute (Public Law 635, 75th Cong., 56 Stat. 462) limited to members of the armed forces of the United Nations stationed in this country.

. . .

The Secretary of Defense included this legislation in the legislative program of the National Military Establishment. The measure has been coordinated with the Departments of the Army, Navy, and Air Force, and with the Treasury Department.

The Department of State in a communication to the Secretary of the Navy recommended that legislation of this character be sought. The Bureau of the Budget has interposed no objection to its enactment.

S. Rep. No. 81–685 (1949), reprinted in 1949 U.S.C.C.S. 1876, 1877 (the Senate Report repeats the substance of H. Rep. No. 81–833 (1949)) (emphasis added). Given the disproportionate benefit that would accrue to the United States across an number of reciprocal arrangements, Congress had every reason to craft a broad exemption. Tellingly, the exemption is to cover all Customs charges and exactions as well:

Subsection (a) of this section would exempt from duties and internal revenue taxes imposed upon or by reason of importation or withdrawal from warehouse (including taxes imposed by secs. 3350 [7] and 3360 of the Internal Revenue Code upon articles coming into the United States from the Virgin Islands and Puerto Rico), and from all customs charges and exactions

Id. (emphasis added). Thus, Congress intended the broadest possible exemption from taxes, whether imposed as Customs duties, other charges, fees or taxes.

---

[7] See note 6 for a description of Sections 3350 and 3360.

**2.      The Applicability of "Internal Revenue Tax" to the HMT**

The broad language and reciprocal structure of the foreign military articles exemption are the critical factors in determining whether the exemption includes the HMT within the term "internal revenue tax."  The obvious starting point for this inquiry is to note that both U.S. Note 3 and the HMT use the term "tax."  When Congress enacted subheading 9809.00.30 in the HTSUS, the HMT was already codified in the Internal Revenue Code and referred to itself "as a tax both in its title and in its body."  Thomson Multimedia Inc. v. United States, 340 F. 3d 1355, 1361 n.4 (2003); see also United States v. United States Shoe Corp., 523 U.S. 360, 367 (1998) ("The HMT bears the indicia of a tax.").  Although it is more important to "regard things rather than names," United States Shoe, 523 U.S. at 367 (quoting Pace v. Burgess, 92 U.S. 372, 376 (1876)), the terminology of the HMT and its location in the Internal Revenue Code are entirely consistent with that of an internal revenue tax.

In terms of substance, federal courts have determined, in some circumstances, that the HMT is either a tax or a measure bearing many of the features of a tax.  See United States Shoe, 523 U.S. at 370 (HMT is a tax for purposes of the Export Clause of the Constitution); Int'l Bus. Machs., 201 F.3d at 1372 (accepting, for purpose of analysis, that "both the structure and the content of the HMT point toward it being an internal revenue tax"); Citgo, 24 CIT at 334, 104 F. Supp. 2d at 107 (finding the HMT to be an "internal revenue tax" within the meaning of 19 U.S.C. § 1309(a)).  It is unlikely that Congress would extend considerable privileges to foreign military articles—preventing the imposition of customs duties or any internal revenue tax imposed upon importation—and yet exclude an import–related measure that appears to be and has been held to be a tax in various contexts.

No court, however, has ruled yet on the precise issue of whether the HTSUS includes the HMT as one of the internal revenue taxes from which the articles of foreign armed forces are exempt. Prior cases do demonstrate that the meaning and effect of the HMT may only be ascertained through careful analysis of the textual provisions at issue, whether they be constitutional or statutory. Both United States Shoe and Thomson Multimedia analyzed constitutional challenges to the HMT by considering how Congress's power to impose flat and ad valorem charges varies according to the requirements of the constitutional provision at issue. See United States Shoe, 523 U.S. at 367–68; Thomson Multimedia, 340 F.3d at 1360–61. In United States Shoe, the Supreme Court determined that the HMT as applied to exports is a tax that violates the express prohibitions of the Export Clause of the Constitution. United States Shoe, 523 U.S. at 370. In contrast, Thomson Multimedia upheld the HMT as applied to imports because it did not run afoul of the less restrictive provisions of the Uniformity Clause. 340 F.3d at 1363–64 ("because the HMT as applied to imports and domestic unloadings is a valid user fee and not a tax, we hold that it is outside the scope of the Uniformity Clause's prohibitions"). Thomson Multimedia recognized that, because the Uniformity Clause is more tolerant of user fees than the Export Clause, the Uniformity Clause imposes fewer restrictions on Congress. Accordingly, the Federal Circuit applied the user fee test developed by Massachusetts v. United States, 435 U.S. 444, 464 (1978), with the understanding that it is much less strict than the standard set forth in Pace v. Burgess, 92 U.S. at 375, and applied in United States Shoe. See Thomson Multimedia, 340 F.3d at 1360–61.

The Government argues that the conclusion yielded by the Massachusetts test in Thomson Multimedia—that the HMT as applied to imports is a user fee and not a tax for purposes of the

Uniformity Clause—automatically defines the foreign military articles exemption in the HTSUS. The court cannot agree, heeding its duty to interpret a statute according to its language and context. See Int'l Bus. Machs., 201 F.3d at 1372 (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)). What came to be known as the Massachusetts test did not originate as an all–purpose tool with which to define "tax" throughout the United States Code. Instead, it was originally crafted to determine whether a federal revenue measure abided by the dormant Commerce Clause, see Evansville–Vanderburgh Airport Auth. v. Delta Airlines, Inc., 405 U.S. 707 (1972), and later applied in the context of states' narrow constitutional immunity from taxation. See Massachusetts, 435 U.S. at 467. In these areas of constitutional jurisprudence, a revenue measure may be discussed as a tax and yet still be considered a constitutionally–valid user fee. Indeed, this was the case in Massachusetts. 435 U.S. at 467 (referring to the measure in question as a "tax" but nevertheless sustaining it as a user fee). In Massachusetts, the Supreme Court adhered to a "practical construction" of the limitations on the federal power to tax states rather than a strict taxonomy of revenue raising measures:

> this doctrine [of state tax immunity] does not inflexibly require the invalidation of any revenue measure that is labeled or operates as a tax. That [the statute at issue] is called or can be characterized as a "tax" thus possesses no talismanic significance. We observe, moreover, that Congress did regard [the statute at issue] as a user fee.

435 U.S. at 461 n.18. Over time, the Massachusetts test has been used in conjunction with various constitutional provisions where it was consonant with a given provision's restriction on Congress's power to impose user fees. See, e.g., United States v. Sperry Corp, 493 U.S. 52, 60 (1989) (evaluating the ad valorem fee imposed upon awards from the Iran–United States Claims Tribunal under the Takings Clause); Thomson Multimedia, 340 F.3d at 1361 (Uniformity

Clause); Alamo Rent–A–Car, Inc. v. Palm Springs, 955 F.2d 30, 30–31 (9th Cir. 1992)

(Commerce Clause challenge to airport access road fee).  Conversely, the Massachusetts test is

inapplicable where the constitutional provision more strictly limits Congress' power to levy

charges, as seen in the successful Export Clause challenge to the HMT in United States Shoe,

523 U.S. at 370.

There is no basis for extracting from this multi–textured landscape the overly–simplistic

rule that a federal statute excludes the HMT whenever it uses the term "internal revenue tax,"

particularly where such a construction of the HTSUS will frustrate the intent of Congress as

expressed in a particular statute and compromise the privileges enjoyed by U.S. armed forces

abroad.  Considering both the broad construction warranted by the reciprocal scheme of the

HTSUS foreign military articles exemption and the fact that for various constitutional and

statutory purposes the HMT is a tax, the court determines that the HMT also is an "internal

revenue tax" within the meaning of U.S. Note 3.

**B.      HMT is paid upon importation.**

The next issue presented is whether the language "tax imposed upon or by reason of

importation" in U.S. Note 3 limits the exemption so as to exclude HMT from its reach.  U.S.

Note 3 (emphasis added).  In Texport Oil Co. v. United States, 185 F.3d 1291 (Fed. Cir. 1999),

the drawback of HMT was not permitted because in the words of 19 U.S.C. § 1313(j)(2),  HMT

is not imposed "because of . . . importation." Texport, 185 F.3d at 1296.  In U.S. Note 3,  "by

reason of importation" corresponds to "because of importation."  As indicated in Texport, HMT

is imposed "because of" port use.  To avoid finding part of the statute redundant, "upon

importation" as used in U.S. Note 3 must mean something more than "by reason of," as statutes

should be interpreted to give meaning to every word.  See Duncan v. Walker, 533 U.S. 167, 174

(2001); Royal Thai Gov't v. United States, No. 02-00026, Slip Op. 04–91 at 21 (Ct. Int'l Trade

July 27, 2004).

Giving meaning to both relevant terms in U.S. Note 3, it becomes clear the HMT is

imposed upon importation in the case of imported goods.  26 U.S.C. § 4461(c) refers specifically

to imported goods.  Section 4461(c)(2) differentiates between exported goods and all others

because, without a specific provision, it would be unclear when taxes or duties are "imposed" on

exported goods.  Thus, under the statute, HMT is imposed on exported goods at the time of

loading and on all other goods at the time of unloading.  Unloading is part of the importation

process.  See Cunard Steamship Co. v. Mellon, 262 U.S. 100, 122 (1923) ("Importation . . .

consists in bringing an article into a country from outside . . . regardless of the mode in which it

is effected.  Entry through a customs house is not of the essence of the act.").  Unloading the

merchandise is "importation" in this sense.[8]

## CONCLUSION

The plain words of U.S. Note 3 to Chapter 98 of the HTSUS do not permit imposition of

the HMT on goods of foreign military personnel reciprocally exempted from taxes and customs

---

[8] This is consistent with the definitional provisions of 19 C.F.R. § 101.1, which state in relevant part, "'date of importation' means . . . the date on which the vessel arrives within the limits of a port in the United States with the intent then and there to unload such merchandise." Id.

duties, charges and exactions.  The applicable legislative history indicates that the words of U.S.

Note 3 must be given this ordinary broad meaning to insure reciprocal rights to U.S. military

personnel.

ACCORDINGLY, the Government's motion is denied and Nippon Express's motion is

granted.  Judgment shall so enter.


/s/ Jane A. Restani_____
                                                                Jane A. Restani
                                                                Chief Judge


Dated this 4th day of November 2004.
New York, New York.