Slip Op. 02 - 41

# UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————————————

|  |  |  |
|---|---|---|
| GEORGE E. WARREN CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| | : | |
| UNITED STATES, | : | Court No. 97-07-01156 |
| | : | |
| Defendant. | : | |
| | : | |

———————————————————————————

[Plaintiff moved for summary judgment on its claim that it was entitled to drawback of Harbor Maintenance Taxes ("HMTs") and Environmental Taxes ("ETs") incurred in connection with entries of petroleum products. Defendant moved to dismiss the action for lack of subject matter jurisdiction arguing that this Court only has jurisdiction under 28 U.S.C. § 1581(a) where there has been a denial of a valid protest, and in this case Plaintiff did not have grounds to file its protest since it did not request drawback of the HMTs and ETs in its original drawback claim. In the alternative, Defendant argued that this action should be dismissed for failure to state a claim upon which relief may be granted because the United States Court of Appeals for the Federal Circuit held in *Texport v. United States*, 185 F.3d 1291 (1999), that the HMT is not eligible for drawback, and the reasoning in *Texport* should also bar drawback of the ET. **Held:** (1) The Court has jurisdiction because Plaintiff exhausted its administrative remedies and an actual controversy exists which is fit for judicial review; (2) Based on the Federal Circuit's conclusions in *Texport*, the HMT is not eligible for drawback; (3) The ET is not imposed in a discriminatory manner against imports, but is a generalized federal tax on petroleum products to provide trust funds to pay the cleanup costs for hazardous waste sites and oil spills; therefore it lacks the nexus to importation required for drawback. Plaintiff's motion for summary judgment is denied, and Defendant's alternative arguments are treated as a cross-motion for summary judgment and granted.]

Decided: April 30, 2002

*Coudert Brothers* (*Steven H. Becker* and *Christopher E. Pey*) and *Galvin & Mlawski* (*John J. Galvin*), of counsel, for Plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Henry R. Felix*), and *Chi S. Choy*, Assistant Chief Counsel, United States Customs Service, of counsel, for Defendant.

**OPINION**

Plaintiff George E. Warren Corporation ("Warren") brings this action pursuant to 28 U.S.C. § 1581(a) seeking drawback of Harbor Maintenance Taxes ("HMTs")[1] and Environmental Taxes ("ETs")[2] incurred in connection with entries of unleaded gasoline in December, 1995 and motor fuel blending stock in January, 1996. In May and June, 1996 Warren exported similar merchandise, and on July 15, 1996 it filed drawback claims with Defendant the United States Customs Service ("Customs") pursuant to 19 U.S.C. § 1313(p), which provides for drawback based on substitution of finished petroleum derivatives. On its drawback request forms, the only dollar amounts Warren specifically claimed were attributable to "Column 1"[3] customs duties. Customs liquidated the drawback claims on October 4, 1996 and granted in-full the amounts claimed by Warren. Subsequently, Warren filed a timely protest challenging Customs' failure to also grant drawback of

---

[1] The HMT is a tax on port use calculated at a rate of 0.125 percent of the value of the commercial cargo. It was enacted pursuant to the Water Resources Development Act of 1986, Pub. L. No. 99-662, Title XIV, § 1402, 100 Stat. 4266 (1986), and is codified at 26 U.S.C. § 4461.

[2] The ET was an excise tax on crude oil received at a United States refinery and petroleum products entered into the United States for consumption, use, or warehousing imposed pursuant to 26 U.S.C. § 4611. The tax rate was the sum of the Hazardous Substance Superfund financing rate, 9.7 cents a barrel, and the Oil Spill Liability Trust Fund financing rate, 5 cents a barrel. The Hazardous Substance Superfund tax was applicable during the period "after December 31, 1986 and before January 1, 1996" and the Oil Spill Liability Trust Fund tax was applicable during the period "after December 31, 1989 and before January 1, 1995." 26 U.S.C. §§ 4611(e)(1) and (f)(1). Recently, legislation was introduced to reinstate both taxes. *See* H.R. 4060, 107th Cong. (2d Sess. 2002).

[3] "Column 1 duties" are the duties imposed by the Harmonized Tariff Schedule of the United States ("HTSUS") based on the classification of the merchandise within the HTSUS. In this instance, the merchandise was classified under HTSUS 2710.00.15 as "unleaded gas motor fuel, other" or HTSUS 2710.00.18 as "motor fuel blending stock." The general Column 1 duty rate for both of these provisions is 52.5 cents a barrel.

the HMTs and ETs associated with the entries. The protest was denied by Customs on the ground that "[t]he Harbor Maintenance Tax (HMT) is an incidental expense incurred upon a vessel entering a harbor and, as such, is not refundable under drawback." Protest No. 5301-97-100054 at Section VI. Warren then filed the present action contesting the denial of its protest**.**

Presently before the Court are Customs' motion to dismiss and Warren's motion for summary judgment. Customs argues that this Court only has jurisdiction under 28 U.S.C. § 1581(a) where there has been a denial of a valid protest, and in this case Warren did not have grounds to file a protest since it did not request drawback of the HMTs and ETs in its original drawback claim. Alternatively, Defendant argues that this action should be dismissed for failure to state a claim upon which relief may be granted because the United States Court of Appeals for the Federal Circuit ("Federal Circuit") conclusively determined in *Texport v. United States*, 185 F.3d 1291 (1999), that the HMT is not eligible for drawback, and the Federal Circuit's reasoning in *Texport* should also bar drawback of the ET. Conversely, Warren argues that it is entitled to summary judgment because the Federal Circuit erred in its *Texport* decision, and both the HMT and ET should, as a matter of law, be eligible for drawback.

For the reasons which follow, the Court concludes that it has jurisdiction to decide the merits of this action. Because there is no issue of material fact and because Customs' alternative arguments address the substantive merits of Warren's complaint, the Court treats Customs' alternative arguments as a cross-motion for summary judgment pursuant to CIT Rule 56(b). The Court holds that the Federal Circuit's decision in *Texport* is controlling on the issue of whether the HMT is eligible for drawback. Furthermore, the Court concludes that the ET lacks the requisite nexus with

importation to make it eligible for drawback.  Therefore, Warren's motion for summary judgment

is denied and Customs' motion to dismiss is granted as a motion for summary judgment.


## I.  *Jurisdiction*

Title 28, section 1581(a) of the United States Code provides that the Court of International

Trade "shall have exclusive jurisdiction of any civil action commenced to contest the denial of a

protest."  In this action, it is undisputed that Warren filed a timely protest regarding drawback of the

HMTs and ETs in question and Customs denied that protest on its merits.  However, Customs argues

that there was no actual "refusal to pay" a claim for drawback for Warren to protest because Customs

paid in-full the amounts claimed by Warren on its drawback forms, and the protest was the first time

Warren requested drawback of the HMTs and ETs.  Defendant's Corrected Memorandum in Support

of its Motion to Dismiss ("Def.'s Br.") at 6.  Customs asserts that Warren's protest was merely an

attempt to recover more drawback than it had initially requested.  *Id*.  Customs concludes that

"[w]ithout a bona fide refusal to pay, there is no case or controversy and no basis for a protest that

would confer jurisdiction upon this tribunal."  *Id*.

Warren argues that its claim for drawback of the HMTs and ETs was implicit in its original

drawback claim filed under 19 U.S.C. § 1313(p).  Plaintiff's Response to Defendant's Motion to

Dismiss ("Pl.'s Response to Def.'s Mot. to Dismiss") at 3-5.  Warren notes that under 19 U.S.C. §

1514[4] it "has the right to contest Customs' liquidation of its drawback entry, or its refusal to pay [a]

---

[4]  19 U.S.C. § 1514 provides that:

(a) Finality of decisions; return of papers

(continued...)

claim for drawback, *including the legality of all orders and findings entering into the same*." Pl.'s Response to Def.'s Mot. to Dismiss at 3 (emphasis added). Thus Warren contends that "[i]mplicit in Customs' grant of drawback of Column 1 customs duties is its decision not to pay drawback of the taxes and fees associated with the imported merchandise identified to the drawback claim." *Id*. (footnote omitted).

Moreover, Warren notes that 19 U.S.C. § 1313(p)(4)(B) was amended by § 2420(d) of the Miscellaneous Trade and Technical Corrections Act of 1999, Pub. L. No. 106-36, 113 Stat. 127, 178-79 (1999), and now provides that "[t]he amount of drawback payable under this subsection shall not exceed the amount of drawback that would be attributable to the article . . . had the claim qualified for drawback under subsection (j)." Subsection (j) of 19 U.S.C. § 1313 is broader than the unamended subsection (p) and specifically provides for drawback of duties, taxes, and fees paid on imported merchandise. The 1999 amendment was to have retroactive effect and provided importers six months to file drawback claims pursuant to the amended statute that would otherwise be barred

---

[4](...continued)

> [D]ecisions of the Customs Service, including the legality of all orders and findings entering into the same, as to–
>
> * * *
>
> (5)  the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;
> (6)  the refusal to pay a claim for drawback;
>
> * * *
>
> shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade . . . .

by the three year statute of limitations. Pub. L. No. 106-36, § 2420(e), 113 Stat. 127, 179. Warren did not file another drawback claim, and it argues that it was not required to do so under the statute and had no reason to do so since Customs denied its first protest on its merits and the present action was already summonsed into this Court. *See* Plaintiff's Supplemental Brief ("Pl.'s Supplemental Br.") at 5-13.

The Court agrees with Warren. As a fundamental matter, this Court's jurisdiction over actions contesting the denial of a protest applies to all such appeals:[5] whether the claim is valid or not is a matter of law for this Court to decide. *See Swisher International, Inc. v. United States*, 205 F.3d 1358, 1364 (Fed. Cir. 2000), *cert. denied*, 531 U.S. 1036 (2000). In this instance, the dispositive question is whether Warren could have or should have explicitly claimed amounts of HMT and ET for drawback as a prerequisite for bringing this action. Although the parties dispute whether the customs regulations in effect in 1996 permitted Warren to make an express claim for drawback of the HMTs and ETs on its drawback claim forms, they agree that the 1999 amendments retroactively provided the right to raise this claim. Nevertheless, Customs contends that Warren should have filed a second drawback claim expressly for the HMT and ET amounts during the six month "sunset" period provided by the 1999 amendment. Defendant's Response to Plaintiff's Supplemental Brief ("Def.'s Response to Pl.'s Supplemental Br.") at 7. In light of the fact that Customs had already ruled on the merits of such a claim in denying Warren's protest, filing a second

---

[5] This Court views with considerable disapprobation the ongoing, unrelenting attacks by the Justice Department on the jurisdiction of the Court of International Trade and suggests that the administration of justice would be served better by diligent lawyering rather than by attempts to subvert the judicial review process.

drawback claim would have been futile. Therefore, contrary to Customs' assertion, the Court finds that Warren has, in effect, exhausted its administrative remedies and concludes that this action presents an actual controversy fit for judicial review.

### II. Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CIT Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

### III. Drawback of Harbor Maintenance Taxes

In *Texport v. United States*, 185 F.3d 1291 (1999), the Federal Circuit found that 19 U.S.C. § 1313(j)(2) provides for drawback where "(1) the charge is 'any duty, tax, or fee assessed under Federal law'; and (2) the charge is assessed 'because of . . . importation.'" 185 F.3d at 1296. Applying these two conditions to the HMT, the court held that:

> Condition (1) is plainly satisfied here, so the dispositive question is whether the HMT is assessed "because of . . . importation." 19 U.S.C. § 1313(j)(2). This language, we think, is best read as limiting the scope of the charges eligible for drawback to only those with a substantial nexus to the importation of merchandise. We thus read the "because of . . . importation" clause to require a nexus between the assessed charges and the act of importation, and therefore preclude the grant of drawback to a duty, tax, or fee that is assessed in a nondiscriminatory fashion against all shipments utilizing ports. . . .
>
> The HMT is a generalized Federal charge for the use of certain harbors. *See* 26 U.S.C. § 4461. It is intended to be assessed

independently of whether the "port use" is for imports, exports, or other shipments; a shipment unloaded in Savannah is charged the same HMT whether its origin is San Francisco or Singapore. *See, e.g.,* 19 C.F.R. § 24.24(b)(1) (listing ports where HMT is assessed). Thus, it does not have the necessary nexus to the importation of goods to qualify it for drawback under section 1313(j)(2).

*Id*. at 1296-97.

In the present action, Warren argues that "the *Texport* decision is incorrect as a matter of fact and law, constitutes *dicta* and is inapplicable to the claims at bar." Plaintiff's Memorandum in Support of its Motion for Summary Judgment ("Pl.'s Br.") at 16. First, Warren argues that, contrary to the Federal Circuit's conclusion, "the HMT is inextricably linked to the process of importation." *Id*. In support of this assertion, Warren cites the Federal Circuit's finding in *United States Shoe Corp. v. United States*, 114 F.3d 1564 (Fed. Cir. 1997), *aff'd.*, 523 U.S. 360 (1998), that:

> In the absence of the export act of loading the goods, and in the absence of the exporter's documents required for that act, the HMT would not be owed and no amount could be determined because the HMT is incurred at the time of loading, 26 U.S.C. § 4461(c)(2)(A), and is based on the value of the goods as determined by the standard commercial export documentation, 26 U.S.C. § 4462(a)(5)(A).

Pl.'s Br. at 16-17 (quoting 114 F.3d 1575). Warren argues that it is inconsistent for the court to find that the HMT is imposed because of exportation, but not because of importation. *Id*. at 17. Therefore, Warren concludes that the *Texport* holding should not control in this action. *Id*.

Warren also argues that the Federal Circuit's reasoning in *Texport* is flawed because it incorrectly states that HMT on domestic shipments is the same as shipments from foreign countries. *Id*. Specifically, the court stated that "a shipment unloaded in Savannah is charged the same HMT whether its origin is San Francisco or Singapore," 114 F.3d at 1297, but Warren notes that the HMT

for the shipment from San Francisco would be calculated based on the "standard commercial documentation" whereas the HMT for the shipment from Singapore would be calculated based on Customs' appraised value of the merchandise. Pl.'s Br. at 17. Therefore, Warren concludes, "the amount of HMT paid can, and in most cases will, differ" and "[t]o the extent that [the Federal Circuit's] holding that the HMT is not imposed because of importation is based upon this erroneous analysis, it should be disregarded as *dicta*." *Id*. at 18.

Warren's final argument is that the HMT should be treated as a duty, rather than a tax or fee, for purposes of determining whether it is eligible for drawback, and that as a duty it satisfies the statutory requirements. *Id*. at 18-26. Title 26, section 4462(f)(1) of the United States Code provides that "[e]xcept to the extent otherwise provided in regulations, all administrative and enforcement provisions of customs laws and regulations shall apply in respect of the [HMT] . . . as if such tax were a customs duty." Warren asserts that "none of the applicable regulations provide that the HMT should not be treated as a duty;" thus it should be treated as a duty for all administrative and enforcement purposes. Pl.'s Br. at 19. As previously noted, in *Texport* the Federal Circuit held that drawback was available under 19 U.S.C. § 1313(j)(2) where "(1) the charge is 'any duty, tax, or fee assessed under Federal law'; and (2) the charge is assessed 'because of . . . importation.'" 185 F.3d at 1296. Warren argues that the "because of . . . importation" requirement applies to taxes or fees, but not to duties, because duties, by their very nature, are imposed on imports. Pl.'s Br. at 25-26.

Warren also argues that drawback is an administrative and enforcement provision of the customs laws. In support of this proposition, Warren compares the language of 26 U.S.C. § 4462(f)(1), quoted *supra*, to 19 U.S.C. § 58c(g)(2), regarding the Merchandise Processing Fee

("MPF"), which states:

> Except to the extent otherwise provided in regulations, all administrative and enforcement provisions of customs laws and regulations, *other than those laws and regulations relating to drawback*, shall apply with respect to any fee prescribed under subsection (a) of this section . . . as if such fee is a customs duty.

Pl.'s Br. at 21 (quoting 19 U.S.C. § 58c(g)(2) (emphasis added)). Warren highlights the fact that the language of the MPF statute parallels the language of the HMT statute except that the MPF statute excludes "those laws and regulations relating to drawback" from "the administrative and enforcement provisions of customs laws." Pl.'s Br. at 21-22. Thus Warren concludes that, in the absence of an express exclusion, drawback is an administrative and enforcement provision of the customs laws. *Id.* at 23. Warren also notes that in *International Business Machine Corp. v. United States*, 201 F.3d 1367 (Fed. Cir. 2000), the Federal Circuit held "that the phrase 'administrative and enforcement' . . . should be read 'broadly.'" Plaintiff's Brief in Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Pl.'s Reply Br.") at 7 (citing 201 F.3d at 1372).

Although Warren's arguments are interesting and well briefed, the Federal Circuit's holding in *Texport* that the HMT is not subject to drawback is, nevertheless, controlling on this issue. With respect to Warren's first two arguments, namely, that the HMT should logically have a substantial nexus to importation if it has one to exportation, and that the Federal Circuit erred, as a matter of law, in stating that the HMT is calculated in the same manner for foreign and domestic shipments, the doctrine of *stare decisis* leads this Court to follow the precedent of the Federal Circuit. *See* 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 134.02[2] (3d ed. 1997) ("The duty to follow the binding decisions of a higher authority does not depend on the correctness of those

decisions."). Furthermore, regarding the Federal Circuit's statement that a foreign and domestic shipment, otherwise identical, would be charged the exact same amount of HMT, this Court concludes that the Federal Circuit's chief point in that section of its opinion was merely that the HMT is assessed on both imports and domestic shipments, not that it would be calculated in the same manner.

*Texport* and the plain meaning of 19 U.S.C. § 1313(j) are also dispositive of Warren's argument that the HMT should be treated as a duty instead of a tax for drawback purposes. Whether the HMT is regarded as a duty or a tax for determining its eligibility for drawback, and whether or not drawback is an administrative or enforcement provision,[6] the plain language of the statute creating the right to drawback of duties, taxes and fees, 19 U.S.C. § 1313(j), requires that the duty, tax, or fee be "imposed under federal law because of its importation." In *Texport*, the Federal Circuit considered the mechanics of how the HMT is imposed and concluded that it does not have the requisite nexus with importation to qualify for drawback under § 1313(j).[7] 185 F.3d at 1297. More importantly, while 26 U.S.C. § 4462(f)(1) provides that the HMT should be treated *as if* it were duty for administration and enforcement purposes, the HMT remains, in essence, a tax. *See Citgo Petroleum Corporation v. United States*, 25 CIT ___, 104 F. Supp. 2d 106, 107-108 (2000).

---

[6] Because the Court finds that the "because of . . . importation" requirement of 19 U.S.C. § 1313(j) applies to duties as well as taxes and fees, the Court does not reach the issue of whether drawback is an administrative or enforcement provision.

[7] In 1998, Customs amended its regulations, and 19 C.F.R. § 191.3(b)(1) now states that the HMT is not subject to drawback. Since this regulation was promulgated after the present action was commenced, it does not apply in this instance.

### IV.  Drawback of Environmental Taxes

Warren argues that it is entitled to drawback of the ETs incurred in connection with the subject entries because the ETs are imposed "because of . . . importation" as required by 19 U.S.C. § 1313(j) and have the specific "nexus with importation" required by *Texport* since they are imposed in a discriminatory manner against imports.  Warren notes that 26 U.S.C. § 4611(a), provides that the taxes are imposed on "petroleum products *entered into the United States for consumption, use, or warehousing.*"  Pl.'s Br. at 12 (emphasis in brief).  Warren argues that "the phrase 'entered into the United States' is synonymous with importation;" therefore the "because of . . . importation" requirement of 19 U.S.C. § 1313(j) is satisfied.  *Id.* at 12-13.  Moreover, Warren argues that the ETs discriminate against imports because they apply to imported "petroleum products," but only domestic "crude oil."  Plaintiff's Collective Response to Defendant's Corrected Briefs at 6.  Therefore, Warren concludes that the ETs are distinguishable from the HMT, because they are not "assessed in a nondiscriminatory fashion against all shipments."  *Id*. (quoting *Texport*, 185 F.3d at 1296).

Contrary to Warren's assertions, Customs argues that the ET, like the HMT, is not imposed because of importation, but is instead a generalized charge "to finance trust funds responsible for paying the cleanup costs for hazardous waste sites and oil spills" that is imposed in a nondiscriminatory manner on both imported petroleum products and domestic crude oil.  Defendant's Corrected Memorandum in Support of its Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J.") at 10 (citing H.R. Rep. No. 96-1016, pt. 2, at 5 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6151, 6153, and H.R. Rep. No. 99-727, at 204-05

(1986), *reprinted in* 1986 U.S.C.C.A.N. 3607, 3733-34.). Customs explains the nondiscriminatory

application of the ETs, stating that:

> Pursuant to 26 U.S.C. § 4611(a) & (b), ETs are imposed on domestic crude oil received at U.S. refineries, on petroleum products imported into the United States, and on domestic crude oil used in the United States or exported, provided the tax had not been imposed previously. The term "crude oil" includes crude oil condensates and natural gasoline. 26 U.S.C. § 4612(a)(1). The term "petroleum product" includes crude oil. Id. § 4612(a)(3). The legislative history to these statutory provisions further explains that the oil subject to tax is "crude oil, including crude oil condensate and natural gasoline" and that "petroleum products" include crude oil, crude oil condensate, natural and refined gasoline, refined and residual oil, <u>and any other hydrocarbon product derived from crude oil or natural gasoline</u> . . ." H.R. Rep. No. 96-1016, pt 2, at 4 (1980), <u>reprinted</u> <u>in</u> 1980 U.S.C.C.A.N. 6151 (emphasis added).

> Thus, contrary to Warren's claim that the ET leaves domestic petroleum products untaxed, the legislature recognized that domestic petroleum products would be "derived from crude oil or natural gasoline" that were [*sic*] already separately taxed. This reading of the legislative intent is further consistent with 26 U.S.C. § 4612(b), which assures that taxes are imposed only once on any petroleum product. <u>See</u> H.R. Rep. No. 96-1016, pt 2, at 5.

Defendant's Reply to Plaintiff's Collective Response to Defendant's Corrected Briefs at 8-9.

Customs also asserts that it "had no role in collecting or imposing [the] ET" and "[t]he only link

between the ET and importation was the timing of when ET was incurred." Def.'s Br. in Opp'n to

Pl.'s Mot. for Summ. J. at 10-11. Thus, Customs concludes that the ETs have only a remote nexus

to importation which does not satisfy the "because of . . . importation" requirement of 19 U.S.C. §

1313(j) as interpreted by *Texport.*

The Court finds that the ETs are not subject to drawback. As Customs' has explained, the

ET is a  generalized charge assessed against all petroleum products, which is imposed on domestic

products prior to refinement and imported petroleum products regardless of their level of refinement at the time they are entered. Since the ET is imposed in a nondiscriminatory manner on both imported and domestic petroleum products, the Court concludes that, like the HMT, it does not have "the necessary nexus to importation to qualify it for drawback under [19 U.S.C. §] 1313(j)(2)." *Texport*, 185 F.3d 1297.

### *V. Conclusion*

For the foregoing reasons, Warren's motion for summary judgment is denied and Customs' motion to dismiss is granted as a cross-motion for summary judgment. Judgment shall enter accordingly.

_____
R. KENTON MUSGRAVE, JUDGE

Decided: April 30, 2002
New York, New York